**ST. ELIZABETH HOSPITAL**

v.

**The UNITED STATES.**

**No. 347–74.**

United States Court of Claims.

June 15, 1977.

Robert A. Wilmot, Milwaukee, Wis., atty. of record for plaintiff. Purtell, Purcell, Wilmot & Burroughs, S. C., Milwaukee, Wis., of counsel.

Francis H. Clabaugh, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before NICHOLS, KUNZIG and BEN-NETT, Judges.

## ON PLAINTIFF'S AND DEFENDANT'S CROSS–MOTIONS FOR SUMMARY JUDGMENT

KUNZIG, Judge.

At stake in this Medicare provider case, before the court on cross-motions for summary judgment, is approximately $235,000. Recovery turns on the method of computing St. Elizabeth Hospital's (plaintiff or St. Elizabeth) depreciation for fiscal years 1967–1969. Plaintiff claims that its depreciation should be based on its actual costs as established by appraisal. Actual cost depreciation would, plaintiff states, greatly increase its reimbursement. Defendant contends that plaintiff's claim of actual cost depreciation costs for 1967–1969 is untimely and that its estimated depreciation based on a percentage of operating costs is binding.

We hold for plaintiff as to its right to recovery. Quantum will be determined in later proceedings.

Plaintiff is a nonprofit, tax exempt corporation which operates a general, short-term hospital in Appleton, Wisconsin. St. Elizabeth is a qualified provider of services under the Medicare Act, 42 U.S.C. § 1395x(e)(1–8) (1970), and has engaged in providing such services from 1966. As a condition of eligibility to receive Medicare benefits, plaintiff filed an agreement with the Secretary of Health, Education and Welfare entitling it to reimbursement for the "reasonable cost" of covered services it furnished to program beneficiaries. 42 U.S.C. § 1395cc (1970). Plaintiff nominated Blue Cross Association (BCA) and its local administering agent, Wisconsin Blue Cross Plan (the Plan), as its fiscal intermediary.

In its role as intermediary, the Plan assumed the duty of determining, by annual audit, the reimburseable costs St. Elizabeth incurred by virtue of providing covered services to Medicare Act beneficiaries.

Section 405.415–18 of Title 20, Code of Federal Regulations (CFR),[1] provides an "appropriate allowance" for depreciation, which is defined either as a fixed percentage of operating costs, or as actual depreciation, if a provider can establish the historical, pre-1966, cost of its assets by records or by an appraisal. Plaintiff elected actual depreciation but, lacking adequate records of its costs, accepted reimbursement of estimated depreciation by the percentage method while it procured an appraisal.

With the Plan's knowledge that plaintiff was securing an appraisal, plaintiff contracted with the Industrial Appraisal Company (IAC) on April 25, 1967 to determine its historical costs. Plaintiff submitted the IAC appraisal to the Plan in June 1970. The Plan found the appraisal report inadequate. After numerous attempts by plaintiff to have IAC correct the deficiencies, plaintiff, at the Plan's suggestion, contract-ed with a different appraisal firm. That firm, Valuation Counselors Company, prepared a new report showing plaintiff's historical cost data.

The Valuation Counselors' report was accepted by the Plan following submission in March 1972, but only for the fiscal years ending after 1969 (that is fiscal years ending on June 30, 1970 and June 30, 1971).[2] The report was not accepted by the Plan for fiscal years ending in 1967–1969 because the Plan stated that the appraisal was submitted after the time allotted to such submissions, namely two years from the provider's contract (1966) to perform Medicare services. The two year rule is set forth in Section 128 of the Provider Reimbursement Manual, published in July 1967.

Plaintiff brought the Plan's decision to the BCA Medicare Provider Appeal Committee, which consists of three BCA representatives and two representatives of providers' associations. Plaintiff claimed the Plan's refusal to accept the appraisal as the basis for amended cost reports for 1967–1969 cost plaintiff $235,360.00—the difference between the amount allowed for depreciation under the estimated percentage method, and the amount reimburseable based on actual depreciation using the Valuation Counselors' report. The Committee denied plaintiff's appeal on September 28, 1973, and plaintiff's request for reconsideration on January 23, 1975. Plaintiff then filed suit in this court seeking to obtain payment of approximately $235,000 it claims is due.

At this time we are concerned only with plaintiff's right to recover. As mentioned above, the issue of quantum will be deferred to later proceedings, discussed *infra*.

Plaintiff pursues its case on two principal grounds. First, plaintiff argues that it is entitled to reimbursement for depreciation based on its actual costs on the theory that the applicable statute and regulation pub-

---

1. All citations are to the 1976 issue of CFR as the relevant sections of Title 20 have not changed in any way material to this case since 1966.

2. We note that the Plan could have also denied, under its interpretation of the two-year rule, plaintiff's recovery for fiscal 1970 and 1971.

lished in the Code of Federal Regulations mandate such payment. As a corollary to this argument, plaintiff contends that the two-year limit imposed by the Provider Reimbursement Manual was improperly applied against it. This argument, in essence, is that defendant, through the Plan and the BCA, denied plaintiff reimbursement in violation of the Medicare Act.

Second, plaintiff claims the BCA's appeals procedures and the composition of the Provider Appeals Committee deprive plaintiff of due process of law in violation of the United States Constitution.

Defendant, in response, takes the position that this court is without jurisdiction to hear this case. In addition, it argues that the two-year limit was properly applied to plaintiff, and that the composition and procedures of the Provider Appeals Committee are constitutional.

We hold for plaintiff. This court has jurisdiction over this case. The two-year rule was improperly applied to plaintiff. The issue of possible unconstitutionality of the Provider Appeals Committee's procedures and composition is not reached as not necessary to our decision.

Before reaching the merits of plaintiff's claim, we must first consider defendant's contention that the court is without jurisdiction to hear this case. Defendant maintains that the Supreme Court's decision in *Weinberger v. Salfi,* 422 U.S. 749, 756–62, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), prohibits judicial review of plaintiff's claim. Defendant takes this position, even though this court has already refused to extend *Salfi* to Medicare cases. *Whitecliff, Inc. v. United States,* 536 F.2d 347, 210 Ct.Cl. 53 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977).

In view of defendant's insistence that *Salfi* precludes judicial review, it is appropriate to restate what this court said in *Whitecliff:*

We decline the invitation to extend *Salfi's* reading of Section 405(h) to this Medicare case. The social security provisions with which the Supreme Court dealt in *Salfi* authorize appeals of all decisions made after hearings, without limitation as to issues; [footnote omitted] the practical effect of the *Salfi* decision was simply the enforcement of the Section 405(g) procedures and prerequisites to judicial review. *See also Mathews v. Eldridge,* 424 U.S. 319, 326–32, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). By contrast, the Medicare statute's express review provisions in effect prior to 1973 apply to extremely limited categories of cases involving providers. [footnote omitted] To import into the Medicare program the *Salfi* preclusion of judicial review (except as expressly authorized) would be to prevent all review of very large categories of cases and issues, including constitutional questions, and to accord absolute finality to adjudications by private organizations like the BCA. Such a result would be of doubtful constitutional validity and would undermine the normal presumption in favor of judicial review. [footnote omitted] We cannot assume that the Supreme Court would extend the *Salfi* interpretation of Section 405(h) to Medicare cases, where the consequences would be so dramatically different, and therefore we adhere to the pre-*Salfi* view of judicial review of Medicare provider disputes.

*Whitecliff, Inc. v. United States, supra,* 536 F.2d at 350–51, 210 Ct.Cl. at 57–58.

■ The pre-*Salfi* view of judicial review of Medicare provider disputes is set forth both in *Whitecliff, supra,* and in *Goldstein v. United States,* 201 Ct.Cl. 888, *cert. denied,* 414 U.S. 974, 94 S.Ct. 287, 38 L.Ed.2d 217 (1973). Essentially, the scope of review established in these two cases [3] and as ap-

---

**3.** *Whitecliff* and *Goldstein* do not stand alone. For a list of the more prominent cases, *see Whitecliff, supra,* 536 F.2d at 349–50, 210 Ct.Cl. at 56. The cases cited in *Whitecliff* point out that the "courts have uniformly sustained judicial review at least for compliance with the Constitution and the governing statute." *Whi-*

*tecliff, supra,* 536 F.2d at 349, 210 Ct.Cl. at 56. *See also Ulman v. United States,* Ct.Cl., 558 F.2d 1, also decided this day; *Overlook Nursing Home, Inc. v. United States,* Ct.Cl., 556 F.2d 500 (1977). *Cf. Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

plied to this case is that we will examine the decision of a Provider Appeals Committee to ensure compliance with the applicable statutory and constitutional provisions. *Whitecliff, supra,* 536 F.2d at 351, 210 Ct.Cl. at 58; *Goldstein, supra.*

■ Plaintiff in this case meets both of the tests for jurisdiction. First, St. Elizabeth alleges that the application of the two-year rule set forth in the Health Insurance Manual violates its right to reimbursement under the Medicare Act. Second, plaintiff alleges that the Provider Appeals Committee, in both its operation and composition, violates plaintiff's constitutional rights. As plaintiff meets both tests, there is no jurisdictional bar and we turn now to the merits of plaintiff's claim.

Here we are confronted with the central issue of the case—whether the two-year limitation for claiming actual depreciation set forth in the Provider Reimbursement Manual, § 128, prevents plaintiff's recovery.

Plaintiff begins its argument that the Manual does not apply with an analysis of its statutory right to recover. The relevant section of the Medicare Act, codified at 42 U.S.C. § 1395x(v)(1) and (1)(B)(1970) (in effect at the time this dispute arose) states:

> The reasonable cost of any services shall be determined in accordance with regulations establishing the method or methods to be used  *  *  *  in determining such costs  *  *  *.  *  *  *
>
> Such regulations shall  *  *  *  provide for the making of suitable retroactive corrective adjustments  *  *  *.

Pursuant to this section, plaintiff points out, regulations were adopted in accordance with the Administrative Procedure Act (APA), 5 U.S.C. § 552(a)(1)(1970), and printed in the Code of Federal Regulations, 20 C.F.R. § 405. With regard to depreciation, the subject of this action, the particular regulatory language is found at 20 C.F.R. §§ 405.401, 405.402, and 405.415–418.

■ These regulations provide that depreciation is an allocable cost and, as a general rule, must be "based on the histori-

cal cost of the asset." 20 C.F.R. § 405.-415(a)(2). However, an optional allowance for depreciation based on a percentage of operating costs is authorized by 20 C.F.R. § 405.416. A provider, such as plaintiff, is not bound permanently by an election of the optional allowance, but may, by the terms of the regulation, change to actual historical cost depreciation *"at any time before 1976."* 20 C.F.R. 405.416(e)(1) (emphasis supplied).

Pointing to 42 U.S.C. § 1395x(v)(1) and (1)(B), *supra* (which assures plaintiff its "reasonable costs" and "suitable retroactive corrective adjustments"), and 20 C.F.R. § 405.416(e)(1), *supra* (which leads plaintiff to believe that it had until 1976 to provide historical cost data), plaintiff next contends that the two-year limit published in the 1967 Provider Reimbursement Manual is a "substantive rule," altering plaintiff's right to recover depreciation.

Because it is a substantive rule, plaintiff continues, it cannot affect plaintiff since the rule was not published in the Federal Register as required by the APA, 5 U.S.C. § 552(a)(1)(D). *See Timber Access Industries, Inc. v. United States,* 553 F.2d 1250, at 1255 (1977). To give effect to the two-year rule, plaintiff concludes, would deny it the "reasonable cost" of its services in violation of the Medicare Act.

Defendant counters by arguing that the two-year rule is not "substantive," but merely instructive and, therefore, not required to be published in the Federal Register. Defendant also cites the APA, and relies on subsection (a)(1) of 5 U.S.C. § 552. This subsection requires only that instructions adopted by an agency be made available to the public. This requirement was satisfied, claims defendant, by the publication of the Provider Reimbursement Manual.

■ Whether a rule is substantive or instructive is a close question, and a decision of this question turns on the facts of each case and the regulatory structure existing

at the time the rule is promulgated. *St. Francis Memorial Hosp. v. Weinberger,* 413 F.Supp. 323, 328 (N.D.Cal.1975). When the impact of the two-year rule is viewed with regard to the instant case, it becomes clear that the rule is a "substantive" one to which 5 U.S.C. § 552(a)(1)(D) of the APA applies.

Plaintiff believed itself entitled to a reasonable retroactive adjustment of its depreciation reimbursement. Upon examining regulations affecting its ability to obtain this retroactive adjustment, the only time limit mentioned is a ten-year one—that plaintiff had from 1966 to 1976 to establish its historical costs. 20 C.F.R. § 405.416, *supra.*

Yet the two-year rule, applying also to a change in method of depreciation calculation, seeks to hold plaintiff to 1968 as the date by which it had to come forward with its historical costs. This eight-year shortening of the time in which to change election clearly had substantive impact on plaintiff in this case. Publication in the Federal Register, therefore, was required. 5 U.S.C. § 552(a)(1)(D).

Defendant, however, does not rest on its "instructive" argument alone. It also seeks to show that plaintiff comes within an exception to the publication rule of the APA. This exception is, that even if a substantive rule is not published in the Federal Register, a person is bound by the rule if he has "actual and timely notice of the terms thereof." 5 U.S.C. § 552(a)(1)(1970). Defendant claims plaintiff's actual and timely notice is shown by two facts: First, that plaintiff cites the Manual in its brief. For this proposition, defendant relies on *Rodriguez v. Swank,* 318 F.Supp. 289 (D.C.Ill. 1970), *aff'd* 403 U.S. 901, 91 S.Ct. 2202, 29 L.Ed.2d 677 (1971). Second, that plaintiff claimed estimated depreciation (defined in the Manual) on its June 1967 cost report.

Before discussing defendant's contentions, a brief word on the scope of the argument is in order. From the pleadings and briefs of the parties, it is evident that plaintiff had *actual* notice of the Manual. The issue then becomes whether plaintiff had *timely* notice of the two-year rule contained in the Manual. By the plain language of the statute, actual notice alone is not enough. Notice must also be timely so that plaintiff had an opportunity to meet the two-year limit.

The facts of this case illustrate that plaintiff did not have timely notice. Simply because plaintiff cited the Manual in its briefs, filed in 1976, does not show that it had notice of the two-year rule in 1968, sufficient to meet the two-year deadline. Defendant's authority, *Rodriguez v. Swank, supra,* is not to the contrary. That case stands for the proposition that plaintiff cannot claim the protection of the APA if, in his brief, he *concedes* that he had actual notice.

Plaintiff in this case does not concede actual notice in such time as to permit it to abide by the two-year limit. Rather, this is the very point that plaintiff argues. For this reason, defendant's reliance on plaintiff's citation of the Manual in its briefs must fail.

Similarly, defendant's contention that plaintiff's claim of estimated depreciation in its fiscal year report filed in June 1967 also fails. Defendant urges that plaintiff's use of this method of depreciation evidences plaintiff's knowledge of the two-year rule. Such a claim taxes the court's imagination. We are at a loss to see how plaintiff could have knowledge of a rule in June 1967 that was not published until July 1967.

■ Upon review of the documents and affidavits filed by the parties, it appears that plaintiff received notice of the two-year rule, at the earliest, only 38 days before the time expired. Notice occurred when a certified public accountant, performing auditing and reporting functions for plaintiff, inquired about applicable time limits. Such a short period of time, given the appraisal to be prepared in this case, is not sufficient to satisfy the "timely" requirement of the APA. *See also Miller v. United States,* 531 F.2d 510, 209 Ct.Cl. 135 (1976); *Hotch v. United States,* 212 F.2d 280 (9th Cir. 1954).

This becomes even more clear in view of the facts of the instant case. Not only was plaintiff lulled into believing that time was not of the essence *before* it became aware of the two-year rule, but *after* plaintiff was informed of the rule, instructions from the Plan totally disregarded the supposed two-year limit. Numerous letters from the Plan to plaintiff, all dated after December 1, 1970, stated that once an acceptable appraisal of plaintiff's historical costs was received by the Plan, plaintiff's depreciation reimbursement would be adjusted. The letter from the Plan to plaintiff of December 16, 1970, in fact, stated that plaintiff "may at any time before 1976 change to actual depreciation."

While we are not saying that the actions of the Plan amount to an estoppel against defendant, when taken together with the late notice received by plaintiff and the fact that the Plan is charged with administering plaintiff's reimbursement, the Plan's reassurances to plaintiff buttress our conclusion that plaintiff did not receive timely notice.

In summary, to this point we have decided that the two-year limit is a substantive rule not affecting plaintiff because it was not published in the Federal Register. In addition, we have concluded that plaintiff did not receive "timely" notice of the limit so that it should be affected regardless of publication.

Because of these decisions, we need not reach the other arguments urged by defendant and plaintiff. Defendant, for example, argues that the two-year rule is reasonable. We do not disagree. Whether it is reasonable has no bearing on our decision that, for the rule to affect plaintiff, it had to be published in accordance with the requirements of the Administrative Procedure Act. Plaintiff, on the other hand, challenges the procedures and composition of the Provider Appeals Committee as unconstitutional. We need not reach this issue, and do not. However, we refer the

parties to the court's discussion of this same issue in a companion case, *Overlook Nursing Home, Inc. v. United States,* Ct.Cl., 556 F.2d 500 (1977).

Accordingly, after consideration of the briefs, stipulation and documents[4] of the parties, and after hearing oral argument, plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied. Judgment is therefore entered for plaintiff, and the cause is remanded to the Trial Division for further proceedings under Rule 131(c) to determine the amount to be awarded plaintiff, consistent with this opinion.

---

4. Plaintiff has moved to strike the affidavit of defendant's witness Stanley Katz on the grounds that the affidavit does not "comply to" Ct.Cl. Rule 101(f). Upon consideration of plaintiff's motion, defendant's response, and the affidavit itself plaintiff's motion to strike is denied.