APPALACHIAN REGIONAL
HOSPITALS, INC.

v.

The UNITED STATES.

No. 247–76.

United States Court of Claims.

May 17, 1978.

Joe W. Fleming, II, Washington, D. C., attorney of record, for plaintiff. David T. Enlow, Murphy, King, Enlow, Dunn & Sledd, Lexington, Ky., of counsel.

Arlene Fine, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before COWEN, Senior Judge, and DAVIS and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge.

This is another in a recent spate of Medicare provider cases. In question is the propriety of Medicare's recoupment of "reimbursements" to plaintiff's nine hospitals for accrued but unpaid interest expenses. The dispute springs from Medicare's recovery of the reimbursements when a private law was passed to forgive plaintiff's debt of principal and interest. This law made it clear that the interest which plaintiff's providers had accrued, and for which Medicare had properly reimbursed them, would never have to be paid.

I

Plaintiff, Appalachian Regional Hospitals, Inc., a nonprofit corporation, owns and operates nine hospitals in Kentucky, Virginia, and West Virginia. The hospitals have been "providers of services," 42 U.S.C. § 1395x(u) (1970), in the Medicare program since 1966. In 1963 and 1964, plaintiff acquired 10 hospitals built in 1955 and 1956 by a subsidiary of the United Mine Workers Welfare and Retirement Fund. Operation

of the facilities in poverty-stricken Appalachia had proved too great a drain on United Mine Workers resources, and plaintiff was organized to assume ownership and operational responsibilities.

The acquisition of five of the hospitals was financed by a grant of $3.9 million obtained by plaintiff in 1963 from the Area Redevelopment Administration (now known as the Economic Development Administration), part of the United States Department of Commerce. Five other hospitals were acquired with the proceeds of a loan from the same source in the amount of $4.1 million, obtained on June 26, 1964, providing for repayment over 40 years with interest accruing at an annual rate of $3\frac{5}{8}$ percent. One hospital of the second group was sold by plaintiff in 1966, and the principal of plaintiff's loan was then reduced to $3,607,-590.

Plaintiff's nine Medicare providers filed annual cost reports, as required, with their respective fiscal intermediaries[1] for fiscal years ending June 30 from 1967 through 1973, claiming as current costs the accruing interest liability on the loan. After audit, Medicare compensated the provider hospitals[2] for the accrued interest along with other reimbursable costs. The parties agree that the reimbursements by Medicare of plaintiff's accrued interest were proper *when made.*

Plaintiff never paid any interest on the loan. Instead, on July 1, 1970, plaintiff and the Economic Development Administration executed a "Modification and Extension Agreement," which waived all defaults to date and deferred all interest payments until July 1975 and payments on principal until July 1985. The 1970 document directed that plaintiff continue to accrue interest as a current expense in computing charges and fees at the hospitals.

Nonetheless, this agreement did not end the hospitals' financial troubles, and congressional assistance was sought. On October 27, 1972, Priv.L.No. 92–161 was enacted. 86 Stat. 1568 (1972). The statute relieved plaintiff of all liability for the principal ($3,607,590) and accrued interest ($1,115,880 through September 30, 1972) on the 1964 loan. Thereupon, the fiscal intermediaries of the hospitals determined that, since the interest expense which had been reimbursed would never be paid, the reimbursements to the hospitals for accrued interest were overpayments which should be recouped. Adjustments were made in various cost reports of the hospitals and the recoupment was made by withholding money which would otherwise have been due under normal Medicare reimbursement practice until the offsets had been achieved. Interest reimbursements totaling $189,192 were eventually recouped.

Each hospital was notified of the overpayment determinations, the fiscal intermediaries having concluded that reimbursements of the accrued interest expenses were in fact overpayments. Plaintiff's counsel was informed by the Bureau of Health Insurance of the Social Security Administration that an appeal of the determinations could be had under regulations which provided for a hearing and determination by a person or board designated by the fiscal intermediary. Plaintiff was also informed that such decision would be reviewable by the Social Security Administration which retained final authority in the matter. Plaintiff apparently indicated it would pursue these administrative remedies.

Plaintiff did not take the matter to the Blue Cross Association board apparently designated by each fiscal intermediary, but

1. Blue Cross of Kentucky, Blue Cross Hospital Service, Inc. (West Virginia), and Blue Cross/Blue Shield of Virginia were the fiscal intermediaries for six, two, and one of plaintiff's hospitals, respectively. The role of the fiscal intermediary in the Medicare system is reviewed in *Ulman v. United States,* 558 F.2d 1, 2 n. 1, 214 Ct.Cl. 308, 311 n. 1 (1977), and

*Summit Nursing Home, Inc. v. United States,* Ct.Cl., 572 F.2d 737 at 739 (decided Feb. 22, 1978).

2. For convenience, payments to, and recoupments from, plaintiff's nine hospitals are sometimes described herein as having been made with respect to plaintiff.

instead wrote directly to the Director of the Bureau of Health Insurance. His response, later confirmed informally by the Commissioner of the Social Security Administration, held that the Government was entitled to recover the payments made to reimburse interest expenses which, while validly accrued, had become certain never to be actually paid by the hospitals. On June 17, 1976, plaintiff filed suit here, claiming entitlement to the amount recouped (now agreed to be $189,192), plus interest, costs, and attorneys' fees, and seeking a declaratory judgment that plaintiff is entitled to same. Both parties have moved for summary judgment, focusing their arguments on three issues: jurisdiction, the effect of the private law which forgave plaintiff's debt, and the allowability under the Medicare statute and regulations of the retroactive denial of plaintiff's interest expense claim. Before discussing these issues in detail, we first summarize briefly the arguments presented.

Defendant contends that this court lacks jurisdiction of this case, asserting that 42 U.S.C. § 1395oo (f) (Supp. IV, 1974) provides for judicial review of plaintiff's claim exclusively in the district court. Plaintiff responds that the statute relied on by defendant to establish exclusive district court jurisdiction applies only to cost reports of Medicare service providers for accounting periods ending on or after June 30, 1973. Plaintiff asserts that very little of the claimed interest expense was accrued in the cost period ending in 1973 and argues that the years primarily involved are 1967–72, years as to which this court has held it has jurisdiction of provider reimbursement disputes under 28 U.S.C. § 1491 (1970). See *Whitecliff, Inc. v. United States*, 536 F.2d 347, 351–52, 210 Ct.Cl. 53, 58 (1976), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977). Defendant's view is that the critical event, the passage of the private law, occurred in the 1972–73 cost reporting period, triggering section 1395oo (f).

On the merits, defendant claims that the applicable statute and regulations permit the recovery of reimbursements for interest accrued but never paid, while plaintiff responds that neither the statute nor regulations promulgated thereunder authorize the recoupment. Plaintiff believes that since the interest expense was validly accrued, it does not matter that later events ensured the interest expenses would never have to be paid. Plaintiff relies on the private law as evidencing a congressional intent that plaintiff be relieved of all liability to the Government for interest and principal and contends the adjustments made by the fiscal intermediaries violate the intent of that law by diminishing the assistance thereby furnished to the hospital system operated by plaintiff. Plaintiff also invokes a regulation which it properly says provides that Medicare reimbursements of medical service providers should not be reduced to offset unrestricted grants to such providers. Defendant responds that Medicare can properly reimburse only those interest expenses which are to be ultimately paid and contends the statute and regulations permit adjustments to recover accrued interest reimbursements when it becomes clear that the accrued interest will not be paid. The private law, defendant insists, does not eliminate defendant's right of recoupment, since it was designed only to relieve plaintiff of its obligations to the Economic Development Administration, not to permit plaintiff to retain reimbursements for expenses which the private law ensured would never actually occur. Defendant does not believe the regulation about unrestricted gifts cited by plaintiff has application to this case, but defendant argues that in any case the grant made to plaintiff should be regarded as restricted.

We turn first to the jurisdictional issue.

## II

■ Jurisdiction in this case presents an unexpectedly knotty problem. The Government has challenged our jurisdiction in provider reimbursement disputes, often without success. *Whitecliff, Inc. v. United States, supra, St. Elizabeth Hospital v. United States*, 558 F.2d 8, 214 Ct.Cl. 322

(1977), and *Overlook Nursing Home, Inc. v. United States*, 556 F.2d 500, 214 Ct.Cl. 60 (1977), are leading cases. They establish that our basic jurisdictional statute, 28 U.S.C. § 1491 (1970), confers jurisdiction upon this court to resolve claims for Medicare reimbursement, in the absence of specific legislation providing that judicial review be available exclusively elsewhere. The *Whitecliff* opinion stated that "[w]here the Medicare statute provides for review, providers and courts must follow the specified procedures and limitations." 536 F.2d at 351, 210 Ct.Cl. at 58.

In this case, the jurisdictional difficulty is created by 42 U.S.C. § 1395oo (Supp. IV, 1974), especially subsection (f). Section 1395oo was added to the Medicare statute in 1972. Pub.L.No. 92–603, § 243(a), 86 Stat. 1422. That section ordered the Secretary to establish a "Provider Reimbursement Review Board" (PRRB), which would hear complaints from Medicare providers of services who were dissatisfied with the determinations of their fiscal intermediaries with respect to required cost reports, so long as the amount in controversy was $10,000 or more and a request for hearing was timely filed. Subsection (f) speaks to judicial review of the Provider Reimbursement Review Board's decision. As originally drafted in 1972, the provision conferred jurisdiction upon the district courts to review the dispute only if the Secretary intervened on his own motion and reversed or modified the board's decision in a manner adverse to the provider. In 1974 the subsection was amended by Pub.L.No. 93–484, § 3(a), 88 Stat. 1459 (1974), so that the critical language is:

A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision. Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received. Such action shall be brought in the district court of the United States for the judicial district in which the provider is located or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of Title 5 notwithstanding any other provisions in section 405 of this title. [42 U.S.C. § 1395oo (f)(1) (Supp. IV, 1974).]

It thus appears that new provider reimbursement disputes involving at least $10,000 will be reviewable only in district courts, but whether the case at hand is subject to the limitations in subsection (f) is a separate and quite distinct question. Both the legislation creating the PRRB and the 1974 legislation amending section 1395oo (f) were subject to explicit effective dates. Subsection (c) of section 243 of Pub. L.No. 92–603, *supra*, provided: "The amendments made by this section [enacting section 1395oo and amending section 1395h(a)] shall apply with respect to cost reports of providers of services * * * for accounting periods ending on or after June 30, 1973." Likewise, Congress instructed that the 1974 amendment "shall be applicable to cost reports of providers of services for accounting periods ending on or after June 30, 1973." Pub.L.No. 93–484, *supra*, § 3(b). The 1972 and 1974 legislation thus both apply only to cost reports of service providers for accounting periods ending June 30, 1973, or later. Whether the funds here in issue pertain to 1973 cost reports is vigorously disputed by the parties.

Plaintiff's argument emphasizes that the interest accruals at issue occurred regularly from 1966 to 1972 and were included in annual cost reports spanning the period from July 1, 1966, to June 30, 1973. Plaintiff asserts, without citation of authority, that "[r]eview of a dispute over an intermediary determination on reimbursement is governed by the accounting period covered by the report which contains the costs in question." To plaintiff, the time at which

the claimed cost becomes disputed should not be relevant.

But this view surely is not sound. The reason plaintiff's accrued interest was never paid was the passage of a special statute in the latter half of 1972. At least until the time of that statute, the accrued interest claims had validity; both parties agree that the payments by Medicare to plaintiff were appropriate when made. So, the 1972 statute was a critical event in creating the dispute, and we cannot adopt an analysis, such as the one plaintiff proposes, which ignores the date on which the validity of the expenses was made doubtful.

Plaintiff's argument also overlooks two other key considerations. First, some of the interest which is claimed was accrued from July 1, 1972, to June 30, 1973, and thus fell squarely within the 1973 cost reporting period. Plaintiff seems to think this is immaterial because only a small part of the interest expenses in dispute were accrued during that period, but we find this unpersuasive. The argument cuts against plaintiff's other contention that the relevant period is the one in which the costs were accrued; application of the latter principle would eliminate the 1972–73 interest claims from our consideration. Second, the adjustments made to the cost reports were primarily to ones closing in 1973. Plaintiff's approach would thus require us to ignore the period in which the adjustments were made, as well as when the reimbursements became questionable. We cannot adopt the unrealistic view that the procedures established in 1972 are wholly inapplicable to disputes concerning costs which were validly accrued over cost reporting periods running from 1966 to 1973 where the event which made the expenses disputable, and the means used to effect the challenged recoupment, both had substantial ties with the period covered by the 1973 cost report.

Defendant's argument, however, is equally flawed. Emphasizing that it does not contest the validity of the accrual of interest or the initial reimbursements by Medicare of such interest "costs," defendant insists that the key consideration is the date of passage of the statute which forgave plaintiff's debt. To defendant, then, the passage of Priv.L.No. 92–161, *supra*, on October 27, 1972, places this dispute squarely within the 1973 cost reporting period. Defendant would let this fact alone control.

To support this approach, defendant offers examples of other situations in which later events invalidate a claimed expense and the adjustment is directed to be made in the period when the later event occurs. One example concerns bad debts, which may be claimed as an expense in the year in which they prove bad but will be added back in to reduce expenses if collected in a later period. 20 C.F.R. § 405.420(f) (1967). But no such procedure is mandated by statute or regulation for accrued interest expenses. Defendant assures us that only by focusing exclusively on the period when the expense claim became disputable can a reasonable accounting treatment be achieved. Such a view is untenable, not so much because it ignores the accumulation of interest expenses over the entire period from 1967 to October 1972, but because it is inconsistent with the means employed by the fiscal intermediaries (and implicitly approved by the Government) to effect the recoupment.

Defendant's own exhibit shows that not all the recoupment was made by adjusting 1973 cost reports. Two of the fiscal intermediaries, Blue Cross/Blue Shield of Virginia and Blue Cross Hospital Service, Inc. (West Virginia), made some of the adjustment through revision of cost reports for the period ending June 30, 1972. The Government found no fault with the method used to effect recoupment. We thus dismiss the argument that this case involves only the cost reports for 1973.

The language establishing the effective date of the 1972 and 1974 legislation speaks with respect to "cost reports * * * for accounting periods ending on or after June 30, 1973." We read this language literally. Thus, for purposes of establishing the applicability of the provision for district court review, the question must be: to what

year's cost report does the dispute primarily relate? Here, of course, the dispute relates in part to each of the years in which interest was accrued, 1966–72. But the fact which made concededly appropriate reimbursements into alleged overpayments was the 1972 statute (passed in the 1972–73 cost report period) forgiving plaintiff's debt. Adjustments made to recoup the interest "reimbursements" were made in both 1972 and 1973 cost reports. This leads us to conclude that the critical factor in this case is which cost reports were adjusted to effect the recoupment. There is no dispute over the original accrual of interest nor over the "reimbursement" by Medicare of plaintiff's interest accruals. The dispute is over the propriety of the recoupment effected on defendant's behalf through the adjustment of 1972 and 1973 cost reports. As to the 1972 cost reports, section 1395*oo* clearly does not apply, and our holding in *Whitecliff, supra*, does.

As to the recoupments made through adjustments of 1973 cost reports, the district court would have had jurisdiction of those disputes which could have been presented to the Provider Reimbursement Review Board. The adjustment of the 1973 cost report for one of plaintiff's hospitals involved less than $10,000, and therefore was not subject to the procedures leading to district court review.[3] 42 U.S.C. § 1395*oo*(a)(2) (Supp. IV, 1974). This component of plaintiff's claim thus comes within our jurisdiction under the *Whitecliff* rationale.

■ What remain, then, are adjustments of more than $10,000 to 1973 cost reports. It can be argued that as to these, district court jurisdiction is exclusive, and that transfer under 28 U.S.C. § 1506 (1970) is appropriate. Defendant offers reasons why we should not make such a transfer, although there would first be a question about the reach of the pendent jurisdiction doctrine. *See Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933);

*Marine Transport Lines, Inc. v. United States*, 139 F.Supp. 301, 135 Ct.Cl. 874, *set aside on other grounds*, 146 F.Supp. 222, 135 Ct.Cl. 876, *cert. denied*, 352 U.S. 935, 77 S.Ct. 227, 1 L.Ed.2d 163 (1956). *Cf. Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1012–13, 178 Ct.Cl. 599, 613 (1967). Such issues need not be resolved, however, for transfer to the district court requires our determination that the case is within the exclusive jurisdiction of the district courts and that such a transfer serves "the interest of justice." 28 U.S.C. § 1506 (1970). Given our disposition of the case on the merits, discussed below, we do not believe a transfer is in "the interest of justice." Nor is this case within the exclusive jurisdiction of the district courts. This case thus does not meet the statutory standards for transfer.

### III

■ Defendant also invokes the doctrine of exhaustion of administrative remedies. According to defendant, plaintiff's claim should be held barred by its failure to pursue all available avenues of administrative relief before filing suit. Defendant hits especially hard at plaintiff's failure to take its claim up with the Provider Reimbursement Review Board, but the discussion above indicates that administrative remedy was not available with regard to the adjustments made to the 1972 cost reports and to one 1973 report. Instead, that part of plaintiff's claim as to which we have jurisdiction was subject to the earlier procedure, under which the fiscal intermediary designated a person or panel to hear the dispute. Thus, the question before us is whether plaintiff should be denied judicial review for noncompliance with these administrative procedures.

Defendant contends that, where a provider is dissatisfied with a reimbursement determination of a fiscal intermediary and is not subject to the PRRB procedures, judi-

---

3. The regulations now permit group appeals by providers of services so long as the aggregate sum involved is at least $50,000. 20 C.F.R. § 405.1837 (1977). This regulation, however, was not effective until after plaintiff obtained a decision from the Social Security Administration.

cial review is conditioned upon pursuit of intermediary hearing procedures set out in 20 C.F.R. §§ 405.490–499i (1973) (adopted May 27, 1972, 37 Fed.Reg. 10724–25).[4] Defendant says that plaintiff should have filed an appeal with the Blue Cross Association Provider Appeal Committee. Defendant points out that a letter from the Bureau of Health Insurance to plaintiff's counsel seems to indicate plaintiff had represented that it would pursue that administrative avenue, although no direct evidence of such a representation has been offered. Whether or not plaintiff stated that it would appeal to the Blue Cross board, plaintiff instead pursued the matter directly with the Bureau of Health Insurance, which responded with a conclusion that the recoupments were proper. The Social Security Administration also reviewed the case and saw no cause to disturb the adjustments implementing the recoupment.[5] Plaintiff argues that the matter in dispute involved no difficult accounting or factual questions requiring intermediate administrative review, making it illogical to pursue intermediate administrative remedies; the administrative body having final authority to act on the matter had already considered the case and made a final determination.

We cannot agree with defendant that plaintiff has failed to exhaust its administrative remedies. It is true, as defendant argues, that disputes not subject to the PRRB appeal procedure could be brought for hearing and final decision before an officer or board designated by the fiscal intermediaries. But we do not agree that such an intermediate step was essential before the matter could be taken to higher authority and thence to this court. The regulations indicate that both the initial determination of a fiscal intermediary and the decision of a hearing officer or board

would be subject to correction by the Social Security Administration if "inconsistent with the applicable law, regulations, or general instructions issued by the Social Security Administration in accordance with the Secretary's agreement with the intermediary." 20 C.F.R. § 405.499g(c) (1973). Further, the authority of the hearing officer (or Blue Cross board, in this case, by designation of the fiscal intermediaries), is limited by the requirement that there be compliance with "general instructions issued by the Social Security Administration in accordance with the Secretary's agreement with the intermediary." 20 C.F.R. § 405.-499b (1973). These regulations, the entire regulatory and statutory scheme, and the logic of sound administration all militate in favor of the conclusion that the Bureau of Health Insurance (as the Secretary's representative)[6] had authority to review reimbursement disputes between providers and fiscal intermediaries. The regulations do not specifically require that intermediate appeals be first filed with a hearing officer, and defendant has not disputed that final administrative authority remained in the Social Security Administration. Indeed, the Bureau of Health Insurance specifically notified plaintiff's counsel that final authority remained in the Social Security Administration.

The Bureau of Health Insurance did not fault plaintiff for bypassing the Blue Cross board but instead proceeded to decide the merits of plaintiff's claim. There is simply no valid purpose to be served by adopting defendant's suggestion that plaintiff should then have gone back to pursue intermediate administrative review; the highest administrative authority had spoken, and further administrative procedures would have been futile. It would be nonsensical to dismiss plaintiff's claim merely for failure to ex-

---

4. Expanded regulations concerning review of provider reimbursement determinations have supplanted the ones adopted in 1972. See 20 C.F.R. Subpart R, § 405.1801 et seq. (1977).

5. No formal hearings were held, and the latter decision was reported not to plaintiff but to congressional supporters of plaintiff. Nonetheless, the practical effect of these actions was to

make useless further administrative proceedings; the view of those having final authority in the matter had been expressed unequivocally.

6. Defendant has not challenged plaintiff's characterization of the Bureau of Health Insurance as the Secretary's representative.

haust administrative procedures which the Bureau of Health Insurance chose to disregard, at least where neither statute nor regulation specifically conditioned one sort of administrative relief upon prior resort to another. Because the law will not require a futile act, because our exercise of jurisdiction here will not intrude into the administrative agency's domain, and because the record presented is sufficient for us to consider the merits fully, we hold that the exhaustion doctrine does not bar plaintiff's claim.

### IV

█ Plaintiff's principal argument on the merits emphasizes that Medicare reimbursement of interest expenses depends solely on their valid accrual, not payment. Defendant concedes that prior to the private law, plaintiff had incurred substantial interest obligations and that the payments by Medicare to plaintiff were proper when made. But defendant asserts that the overpayment, and defendant's right to recoup, occurred when the interest obligation was forgiven by Priv.L.No. 92–161, supra. Plaintiff contends that the 1972 statute did not affect plaintiff's entitlement to Medicare payment of previously accrued interest, emphasizing that the Medicare system requires accrual, not cash, accounting. Nothing in the Medicare statute or regulations, plaintiff asserts, requires that properly accrued costs be subsequently liquidated by cash transfer to be reimbursable. Defendant does not disagree, but it insists that costs are reimbursable only when some detriment is ultimately suffered by the provider. Moreover, defendant goes further and argues that the whole weave of accounting provisions establishes an unequivocal intent which required the adjustments made by the fiscal intermediaries here. Defendant relies principally on the regulations relating to interest, although support is drawn from numerous other provisions.

Defendant contends it has always been a fundamental principle of Medicare reimbursement that payments by the system to providers of services should be directed toward reimbursement of actual costs. Since the beginning of the Medicare system, reimbursement has been limited to the "reasonable cost" of services provided. 42 U.S.C. § 1395f(b) (Supp. IV, 1965–68); 20 C.F.R. § 405.401(a) (1967). The Secretary was directed to adopt regulations allowing for suitable retroactive adjustments where the aggregate reimbursement was either inadequate or excessive. 42 U.S.C. § 1395x(v)(1)(B) (Supp. IV, 1965–68). The regulations early focused on adopting accounting principles designed to meet "actual costs." See 20 C.F.R. § 405.402(a) and § 405.453(d) and (e) (1967). In the interest of accuracy, certain retroactive adjustments of interim payments in costs were permitted. 20 C.F.R. § 405.402(b)(2) and § 405.-454(a) (1967). No specific regulation addressed the reimbursability of interest costs, but the overall intent was to reimburse only the "reasonable cost" of services, which concept was defined to include only "necessary and proper costs." 20 C.F.R. § 405.451 (1967).

Subsequent amendments of the statute and the regulations have continued the emphasis on limiting reimbursement to actual costs. By the time the recoupments were made, section 1395x(v) defined "reasonable cost" as "the cost actually incurred, excluding therefrom any part of incurred cost, found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A) (Supp. II, 1972). That subsection retained the requirement that the Secretary prescribe regulations providing for "the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive." 42 U.S.C. § 1395x(v)(1)(A)(ii) (Supp. II, 1972). We have held that this provision authorizes the making of retroactive adjustments for any prior period where the method of cost reimbursement proved either inadequate or excessive. The statutory duty to make such retroactive adjustments has been held mandatory, even though the Secretary's failure to adopt such regulations left only a limited

correction provision, 20 C.F.R. § 405.454(f) (1973), focusing solely on year-end adjustments where interim payments proved inadequate or excessive. *Whitecliff, Inc. v. United States, supra,* 536 F.2d at 351–52, 210 Ct.Cl. at 60. *Accord, Kingsbrook Jewish Medical Center v. Richardson,* 486 F.2d 663, 669–70 (2d Cir. 1973). Accrual accounting remains the normal procedure, the regulation providing that "expenses are reported in the period in which they are incurred, regardless of when they are paid." 20 C.F.R. § 405.453(b)(2) (1973). Subsection (f) of that same regulation provides: "Amended cost reports to revise cost report information which has been previously submitted by a provider may be permitted or required as determined by the Social Security Administration."

This collection of statutory and regulatory references indicates that costs ordinarily paid in cash (as distinguished from ones like depreciation, discussed below) *must* be paid to be reimbursable and that amendment of cost reports to remove excessive cost claims may be required or permitted by the Social Security Administration.

It thus may be seen that there was nothing new or different in the 1972 regulation concerning interest.[7] That regulation provides in part as follows:

(a) *Principle.* Necessary and proper interest on both current and capital indebtedness is an allowable cost.

(b) *Definitions*—(1) *Interest.* Interest is the cost incurred for the use of borrowed funds. * * *

(2) *Necessary.* Necessary requires that the interest:

(i) Be incurred on a loan made to satisfy a financial need of the provider. Loans which result in excess funds or investments would not be considered necessary.

(ii) Be incurred on a loan made for a purpose reasonably related to patient care.

\* \* \* \* \* \*

(3) *Proper.* Proper requires that interest:

(i) Be incurred at a rate not in excess of what a prudent borrower would have had to pay in the money market existing at the time the loan was made.

(ii) Be paid to a lender not related through control or ownership, or personal relationship to the borrowing organization. \* \* \* [20 C.F.R. § 405.419 (1973).]

Defendant emphasizes the last sentence just quoted. It indicates the expectation that interest costs, to be reimbursable, must be *paid.* Of course, since the system is on an accrual basis, the costs need not be paid by the time the cost report is filed to be reimbursable. Yet, when later events make it clear that accrued interest expenses will never be paid, then such costs are no longer "proper." Unless both "necessary and proper," interest expenses are not reimbursable. 20 C.F.R. § 405.419(a) (1973).

Plaintiff says, however, that there was no excessive reimbursement here because the regulations do not require that interest be *paid* but only that it be properly *incurred.* The regulations, however, demonstrate that, while incurring the interest permits the accrual of interest expenses, ultimate payment is necessary for Medicare's reimbursement to remain appropriate. In addition to the provision just discussed, one regulation quoted earlier bears repeating. "[E]xpenses are reported in the period in which they are incurred, regardless of when they are paid." 20 C.F.R. § 405.453(b)(2) (1967). This indicates that *when* interest is paid is of no consequence, but we cannot leap from that to the inference that it does not matter *whether* the interest will be paid.

Defendant's argument for retroactive corrections of interest expense claims is strengthened further by regulations gov-

---

7. Neither party suggests there is any problem in applying the regulation retroactively, both evidently agreeing that the regulation is interpretative of existing law rather than a substan-
tive revision thereof. *Cf. Gosman v. United States,* Ct.Cl., 573 F.2d 31 at 39 (decided Feb. 22, 1978).

erning analogous situations. Where, for example, a provider claims the purchase cost of goods or services, and that cost is subsequently reduced by a discount, allowance, or refund, the cost originally reported must be adjusted accordingly. 20 C.F.R. § 405.425 (1967). Also, when amounts previously written off as bad debts are recovered in a subsequent accounting period, the income regained must be used to reduce the cost of beneficiary services for the period in which the collection is made. 20 C.F.R. § 405.420(f) (1967). These regulations evidence an administrative intent, in keeping with Congress's instructions, that Medicare reimbursement must reflect the *actual costs* realized by the provider, not theoretical expenses having no connection with actual ones.

Plaintiff tries to deflect this argument by contending that the regulations just cited show the Government knows how to require that reimbursement depend on an actual expenditure. Plaintiff notes that only one situation is specifically subject to a Provider Reimbursement Manual requirement that claimed costs actually be liquidated by a cash disbursement, and infers from this that the Government has *not* chosen to require that accrued interest costs actually be liquidated by cash to be reimbursable. We disagree. The regulations do not and cannot anticipate every conceivable situation but the scheme as a whole bears many indications that reimbursable costs were supposed to be limited to actual expenses and that interest "costs," although properly accrued, must be adjusted when later events show the expense claim to be unfounded or that it never materialized.

The foregoing does not mean that all expenses to be reimbursable must involve a cash outlay. Defendant's argument is not pressed so far. As plaintiff points out, depreciation may be reimbursed although no cash outlay is immediately involved. 20 C.F.R. §§ 405.415–.418 (1967). Other similar situations are cited. But we agree with defendant that the regulations make it

clear that plaintiff must suffer an actual detriment before an expense can truly be regarded as a cost, subject to reimbursement. In the case of depreciation, it is irrelevant that cash is not expended as an asset depreciates. There is a tangible detriment to the owner when an asset in which an owner has an investment is used up. To make the depreciation example analogous to our case, we would have to hypothesize a situation where depreciation is claimed on an asset which, later events reveal, was never depreciating. Where there is no genuine depreciation, depreciation expenses are not reimbursable either,[8] just as accrued interest that will never be paid is not a cost of providing medical services. Plaintiff never has and never will pay the interest which it claims as a "cost." The purposes of the statute and regulations can be served only by agreeing with defendant that the Government was entitled to recover this sum from plaintiff.

V

■ Plaintiff argues that, whatever the general rule may be about Medicare recoveries of retroactively determined overpayments, a separate rationale supports plaintiff's claim. Plaintiff relies on the private law which canceled its debt, and plaintiff finds in that law an intent to let plaintiff retain the interest payments it received from Medicare.

The statute relieved plaintiff "of all liability for repayment to the United States of the sum of $3,607,590, together with all interest accrued thereon, * * * the forgiveness of such loan being necessary to the provision of needed hospital facilities." Priv.L.No.92–161, *supra*. Plaintiff emphasizes that the statute speaks of "all" liability and does so with respect "to the United States," not just to the Economic Development Administration. But defendant points out that the statute forgives only "the sum of $3,607,590, together with all interest accrued thereon," rather than explicitly forgiving not only the loan and the

---

**8.** The regulations do provide, however, for accelerated depreciation through the declining

balance and the sum-of-the-years' digits methods. 20 C.F.R. § 405.415(d)(1) (1967).

interest but also the Medicare overpayments for accrued interest.

We look in vain for explanations of the legislative intent on this issue. The Senate report on the private law indicates the purpose of the legislation was to relieve plaintiff of its entire obligation to the Economic Development Administration, but the report does not address itself to the question of Medicare recoupment of accrued interest reimbursements. *See* S.Rep.No.92–1289, 92d Cong., 2d Sess. (Oct. 11, 1972).

The report indicates a view that the cost of the measure would be the outstanding principal of $3,607,590, plus interest of $1,115,880. This statement offers no help in determining intent regarding Medicare payments on accrued interest.

In fact, there are no contemporaneous indications that the Congress even considered the collateral issue of whether Medicare could recover its payments to plaintiff for accrued interest. For obvious reasons, post-legislative statements by Members of Congress are at best weak evidence of what Congress earlier intended.[9] *Aparacor, Inc. v. United States*, Ct.Cl., 571 F.2d 552 at 556 (decided Feb. 22, 1978). Unquestionably Congress wanted to assist plaintiff and to help sustain a financially insecure hospital system performing a valued public service. But nothing that Congress said permits the inference that it intended the Medicare program should deviate from its cost-oriented accounting or that plaintiff's hypothetical interest costs should remain reimbursed.

Plaintiff tries to turn this around by saying that Congress did nothing to indicate Medicare *should* recover the interest costs which had been validly reimbursed. But the onus is on plaintiff to justify retaining reimbursements of accrued interest where the interest obligation underlying those accruals has been forgiven. As discussed above, the statute and regulations governing Medicare are strongly oriented to actual costs. In the absence of contrary instructions, we must uphold the legislature's unmistakable intent that recovery of reimbursements be allowed where circumstances prove cost claims excessive.

Plaintiff contends defendant's approach results in an unintended diminution of the benefit Congress deliberately conferred. Plaintiff says the private law was intended to help plaintiff, not the Medicare system. We agree with defendant that plaintiff is looking at it backwards. If plaintiff is allowed to prevail, it will have collected almost $200,000 for interest costs from a program designed to reimburse only actual costs, even though it later was given outright all the money it had borrowed and all the interest which had accrued on the loan. The court has no authority to grant such a gratuity as plaintiff demands here. Congress made the judgment that plaintiff deserved to be released from its obligation to the Economic Development Administration by Congress did not prohibit Medicare from making the retroactive adjustments which were made appropriate by the forgiveness of the interest arrearages.

## VI

Plaintiff finally argues that a specific regulation prohibits the retroactive adjustments made by the fiscal intermediaries in favor of defendant. Plaintiff cites 20 C.F.R. § 405.423(a) (1967), which provides that "[u]nrestricted grants, gifts, and income from endowments should not be deducted from operating cost in computing reimbursable cost." The regulation defines its applicability by saying:

> * * * Unrestricted grants, gifts, and income from endowments are funds, cash or otherwise, given to a provider without restriction by the donor as to their use. [20 C.F.R. § 405.423(b)(1) (1967).]

Plaintiff believes the private law's relief fits this definition. We hold otherwise.

---

**9.** Indeed, this evidence shows the awareness of several congressmen that Medicare recovered from plaintiff the accrued interest earlier "reimbursed"; yet no legislation has been passed to force defendant to repay plaintiff the recovered overpayment.

Whether or not the forgiveness of a debt constitutes a grant or gift need not be decided, for the regulation applies only to *unrestricted* grants and gifts. Plaintiff surely can occupy no better position than if the Congress gave plaintiff an amount equal to the interest and principal which it owed the Economic Development Administration and told plaintiff the funds could be used only to retire its debt. If this had been done, it would not have been possible to conclude that the grant or gift was unrestricted, for clear limitations were placed on the use of the money. Here, where plaintiff was not even given any money to retire the debt but the debt was instead directly canceled, the same result must obtain. We reject outright plaintiff's argument that the gift should be regarded as unrestricted since it freed funds which could then be used for any other purpose. Such an argument would convert the most restricted gifts into unrestricted ones and subvert the plain meaning of the regulation.

The foregoing discussion indicates that we do have jurisdiction of part of plaintiff's claim, that plaintiff's claim is undeserving of judicial relief, and that the statutory requirements for transfer to the district court are not met. Accordingly, defendant's motion for summary judgment is granted, plaintiff's cross-motion for summary judgment is denied, and the petition is dismissed.