**MOODY NURSING HOME, INC.**

v.

**The UNITED STATES.**

No. 431–78.

United States Court of Claims.

April 30, 1980.

Cleburne E. Gregory, III, Atlanta, Ga., attorney for record, for plaintiff; Arnall, Golden & Gregory, Atlanta, Ga., of counsel.

Marsha D. Peterson, Washington, D.C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D.C., for defendant; Alvin N. Jaffe, Dept. of Health, Ed. & Welfare, Washington, D.C., of counsel.

Before FRIEDMAN, Chief Judge, and KUNZIG and BENNETT, Judges.

KUNZIG, Judge:

We are presented in this case with the question of how much reimbursement, if any, plaintiff, a skilled nursing facility, is due for physician fees incurred in operating a required utilization review program. For the reasons stated below, we affirm the decision of the Blue Cross Association Pro-

vider Appeals Committee and hold the apportionment of utilization review costs between Medicare and private patients proper.

Plaintiff, Moody Nursing Home, Inc., is a qualified skilled nursing facility under the Medicare program. 42 U.S.C. § 1395x(j) (1976). In order to qualify as a skilled nursing home and be eligible for reimbursement of reasonable costs for care provided Medicare patients, plaintiff must meet a variety of requirements. The requirement with which we are concerned is that Moody Nursing Home establish a utilization review plan. *Id.* at § 1395x(j)(8) and (k). The purpose of the utilization review plan is to establish a committee of physicians to review patients for eligibility, length of stay and adequacy of care among other things.

Moody Nursing Home established a utilization review plan in qualifying for the Medicare program. While the statute says that such plan shall provide for review "on a sample, or other basis," *id.* at § 1395x(k)(1), plaintiff elected to review the admissions of all patients to its facility. While eligibility for the Medicare program initially rests upon the attending physician, the utilization review committee's review can establish eligibility. *Id.* at § 1395f. Thus, by reviewing all patients' admissions, Moody was able to qualify many patients for Medicare whose own physicians had for some reason not qualified them.[1]

Plaintiff obviously does not provide its services *gratis.* For care provided to qualified Medicare patients, it is reimbursed through its fiscal intermediary, United Hospitals Service Association of Atlanta, a Blue Cross Plan affiliate. In turn, the intermediary is reimbursed by the Secretary of Health, Education and Welfare. *See Sacred Heart Hospital v. United States,* 616 F.2d 477 (Ct.Cl.1980); *Overlook Nursing Home, Inc. v. United States,* 214 Ct.Cl. 60, 556 F.2d 500 (1977). As this court explained recently in *Pasadena Hospital Association, Ltd. v. United States,* 618 F.2d 728,

at 729 (Ct.Cl.1980), the fiscal intermediary makes interim estimated payments for services rendered to Medicare patients. The intermediary is then responsible for auditing the provider's annual cost reports to determine which costs were properly charged to Medicare and make any necessary adjustments.

For fiscal years 1969 to 1972, plaintiff charged Medicare for 100 percent of the physician fees associated with operation of the utilization review plan and was paid estimated interim amounts based on these charges. Upon auditing the annual cost reports for those years, however, the intermediary determined that it had overpaid plaintiff because the nursing home was only entitled to those physician's fee attributable to patients ultimately determined to be eligible for Medicare.

Moody appealed the intermediary's decision to the Blue Cross Association Provider Appeals Committee (BCA) which apportioned the physician's fees between those patients over age 65 and those under age 65. Health, Education and Welfare's Social Security Administration's Bureau of Health Insurance (BHI) directed BCA to revise its decision and to apportion the utilization review costs among all patients, with Medicare reimbursing only those costs allocable to Medicare patients.

Subsequently, plaintiff filed the instant suit in the United States District Court for the Northern District of Georgia. That court effectively affirmed BCA's decision as revised by BHI. On appeal, however, the United States Court of Appeals for the Fifth Circuit determined that the district court was without jurisdiction and ordered the case transferred to this court pursuant to 28 U.S.C. § 1406(c) (1976). The district court so transferred and we must consider the appeal.

■ Our jurisdiction to consider this case is well established. *See Pasadena Hospital Ass'n Ltd. v. United States,* 618 F.2d 728,

---

1. Of course, the utilization review committee may also determine that patients admitted for the Medicare program are ineligible.

729 (Ct.Cl.1980). Our scope of review, however, is limited to determining whether the administrative decision is arbitrary, capricious, unsupported by substantial evidence or contains errors of law. *Overlook Nursing Home, Inc. v. United States*, 214 Ct.Cl. 60, 65, 556 F.2d 500, 502 (1977).

As noted above, as a prerequisite to participation in the Medicare program, Moody was required to establish a utilization review plan. 42 U.S.C. § 1395x(j)(8) (1976). That utilization review plan must meet the requirements of section 1861(k) of the Medicare Act, *id.* at § 1395x(k), which provides:

A utilization review plan of a . . . skilled nursing facility shall be considered sufficient *if it is applicable to services furnished by the institution to individuals entitled to insurance benefits under this subchapter*, and if it provides—(1) for the review, on a sample or other basis, of admissions to the institution, the duration of stays therein, and the professional services ( . . . ) furnished, (A) with respect to the medical necessity of the services, and (B) for the purpose of promoting the most efficient use of available health facilities and services . . . . [Emphasis added.]

The regulations in effect at the times in question outline similar requirements for the utilization review plan.[2]

Plaintiff argues that the statute and regulations set only minimal requirements for a utilization review plan and its decision to review all patients is a suitable "other basis" for the plan entitling it to reimbursement. Moreover, Moody contends that since Medicare is remedial and to be liberally construed in favor of guaranteeing adequate medical care to the aged, *citing Whitman v. Weinberger*, 382 F.Supp. 256 (E.D. Va.1974), the nursing home is performing a valuable service for Medicare in evaluating the eligibility of all its patients over age 65 and thus deserves reimbursement for its utilization review plan costs. This seems to be the crux of plaintiff's argument: it has an excellent "track record" in determining patient eligibility and has certified many individuals who might otherwise have not secured benefits.

■ Plaintiff's determination to review 100 percent of all admissions does not appear as selfless as its characterization would make it appear. Rather, while the review benefits Medicare, it also benefits the nursing home. Moody is able to certify many patients for Medicare, which assures them of prompt payment, whereas collection may be difficult from private patients. Apparently, from the proliferation of nursing homes and similar institutions, Medicare is a business and a good one. The decision to engage in a 100 percent review process, then, is a business cost and it may even be a wise one. Nevertheless, our review of the statute and regulations convinces us that Medicare only requires reimbursement of plaintiff for those costs pertaining to Medicare beneficiaries.

While the statutes creating the utilization review plan requirement are not crystal clear, they indicate that costs are reimbursable only where allocable to Medicare beneficiaries. Thus, section 1861(k) states that a plan is sufficient if applicable to individuals entitled to Medicare benefits. 42 U.S.C. § 1395x(k) (1976). *See also* 20 C.F.R. § 405.1137 (1972). Moreover, defendant is correct in pointing out that *the general provision governing reimbursement specifically provides that Medicare will only pay for services rendered to Medicare beneficiaries.* 42 U.S.C. § 1395x(v)(1)(A) (1976). Furthermore, the regulation covering utilization review plans states that all utilization review plan costs incurred in connec-

---

**2.** 20 C.F.R. § 405.1137 (1972) (now printed as amended at 42 C.F.R. § 405.1127 (1979)), provided:

The extended care facility has in effect a plan for utilization review which applies at least to the services furnished by the facility to individuals entitled to benefits under title XVIII of the Act, and meets all other requirements of section 1861(k) of the Social Security Act. An acceptable utilization review plan provides for: (1) The review on a sample or other basis, of admissions, duration of stays, and professional services furnished; and (2) review of each case of continuous extended duration.

tion with operating the program "are reimbursable to the extent that such costs relate to health insurance program beneficiaries." 20 C.F.R. § 405.1137(b)(4) (1972).

Finally, we note two other significant factors. First, plaintiff considers it significant that HEW proposed a regulation in 1974 (beyond our period for consideration) which would have allowed full reimbursement for a 100 percent utilization review plan. That regulation, however, was never adopted, 39 Fed.Reg. 41604 (1974), and would have been superfluous if the existing regulations authorized that very practice (as plaintiff has consistently argued). Second, the Provider Reimbursement Manual, § 2126.2 HIM-15 (1972), provides that:

> Where utilization review covers only Medicare beneficiaries, compensation to physicians for their utilization review services is reimbursable 100 percent by the Medicare program.

Where the committee's services benefit other plans or patients, though, the costs are to be apportioned. While we have urged caution in regard to the substantive use of the Provider Reimbursement Manual, *Ami-Chanco, Inc. v. United States*, 217 Ct.Cl. 76, 576 F.2d 320 (1978); *St. Elizabeth Hospital v. United States*, 214 Ct.Cl. 322, 558 F.2d 8 (1977), its provisions often, as here, provide useful interpretive decision. *See Gosman v. United States*, 215 Ct.Cl. 617, 573 F.2d 31 (1978).

All told, BHI was correct in ordering BCA to revise its decision, *cf., Sacred Heart Hospital v. United States*, 616 F.2d at 485 (1980), and BCA's subsequent decision allocating physician costs for the utilization review plan between Medicare and non-Medicare patients was proper.

Accordingly, upon thorough consideration of the parties' submissions and after oral argument, plaintiff's motion for summary judgment is denied. Defendant's cross-motion for summary judgment is granted and the petition is dismissed.