SOUTHERN PAC. CO. v. LOTHROP. SPO-
KANE, P. & S. RY. CO. v. SAME. ORE-
GON–WASHINGTON R. & NAV. CO. v.
SAME.

(Circuit Court of Appeals, Ninth Circuit.
November 1, 1926.)

Nos. 4870–4872.

**1. Carriers ☞189.**

Ambiguous tariffs are to be construed fa-
vorably to shippers.

**2. Carriers ☞189.**

Carrier's intention as to applicable rate is
competent only in so far as it is fairly express-
ed in language of printed rates.

**3. Carriers ☞189.**

Section of tariff relating to goods shipped
to Hawaiian Islands, and containing alternative
application clause to effect that lower rate of
any section should be applied, *held* not applica-
ble to domestic shipments.

**4. Carriers ☞189.**

Abandonment by carriers of alternative ap-
plication clause of tariffs pending suit *held* not
implied admission that such clause made tariff
on shipments to Hawaiian Islands applicable to
other shipments.

In Error to the District Court of the
United States for the District of Oregon;
Chas. W. Wolverton, Judge.

Separate actions by John H. Lothrop
against the Southern Pacific Company,
against the Spokane, Portland & Seattle Rail-
way Company, and against the Oregon-
Washington Railroad & Navigation Com-
pany. Judgments for plaintiff (10 F.[2d]
225), and defendants separately bring error.
Reversed.

Ben C. Dey and Alfred A. Hampson, both
of Portland, Or., for plaintiff in error South-
ern Pac. Co.

Carey & Kerr and Charles A. Hart, all
of Portland, Or., for plaintiff in error Spo-
kane, P. & S. Ry. Co.

Arthur C. Spencer, Arthur A. Murphy,
and Thomas H. Maguire, all of Portland, Or.,
for plaintiff in error Oregon-Washington R.
& Nav. Co.

James G. Wilson and John F. Reilly, both
of Portland, Or., for defendant in error.

Before RUDKIN, Circuit Judge, and
DIETRICH and KERRIGAN, District
Judges.

DIETRICH, District Judge. Each of the
three actions was brought to recover alleged
overcharges for freight on shipments of au-
tomobiles from Detroit and neighboring
points to Portland, Or., and other Western
cities. In each there was judgment for the
shipper, and the carrier brings error. The
cases involve the same state of facts and have
been submitted together.

[1, 2] All the shipments were of domestic
character—that is, none was consigned or des-
tined beyond the Pacific Coast seaboard—and
all were made during the period from July
1, 1922, to November 1, 1923. The charges
complained of were computed pursuant to
section 2 of the established tariffs, and the
shippers contend that they should have been
based upon the lower rates of section 4. That
is the controlling, and indeed the only, issue.
Admittedly it is to be resolved by a reference
to the tariffs alone, and, if they are ambigu-
ous, they must be construed favorably to the
shippers. Sutherland Flour Mills Co. v. Di-
rector General, 81 Interst. Com. Com'n R.
365; N. W. Steel Co. v. Director General,
68 Interst. Com. Com'n R. 195; Pacific Rice
Mills Co. v. Director General, 78 Interst.
Com. Com'n R. 459. Furthermore, the in-
tention of the carrier is competent only in so
far as it is fairly expressed in the language
of the printed rates. Caddo Central Oil, etc.,
Co. v. Director General, 92 Interst. Com.
Com'n R. 627. It will therefore be seen that
the real controversy is in narrow compass,
and we turn to the tariffs for its precise
definition.

Prior to June 1, 1922, under West-Bound
Tariff Q–4, there were three sections; section
1 prescribing class rates, section 2 commodity
rates, and section 3 special commodity rates.
Each of these sections carried what is called
an alternative application clause, preceding
the specific rates prescribed, to the effect that,
if it should appear that the rate for the same
service in either of the other two sections was
lower, such lower rate should be applied.
The purpose of these alternative clauses is
manifest: Where a given shipment would
come within the terms and meet the condi-
tions of more than one rate, as prescribed, the
shipper was to have the benefit of the lowest
applicable rate.

By Supplement No. 34, effective June 1,
1922, there was added section 4, denominated
"Export Rates to Pacific Coast Ports, Apply-
ing Only on Traffic Destined to and Consign-
ed through to the Hawaiian Islands." It list-
ed a number of commodities, among them be-
ing automobiles, and generally the rates speci-
fied therein were lower than those prescribed
in section 2. By an alternative clause, adopt-
ed at the same time, it was provided that, if
the rate in sections 1, 2, and 3 was lower than
the rate prescribed by section 4, the lowest
rate should apply. As will be observed, this
clause was not broad enough to be material

to the present controversy. But later "West-Bound Tariff No. 4–R" was adopted, effective July 1, 1922, with the caption in respect to section 4, "Export Rates to Pacific Coast Ports on Traffic Destined to and Consigned through to the Hawaiian Islands," and with an alternative clause substantially like the one last above noted. The alternative application clauses of sections 1, 2, and 3 were also amended to include section 4, the one coupled with section 2 being made to read as follows: "If the rate in section 1, section 3, or section 4 of this tariff makes a lower charge on any shipment than the rate in section 2 of this tariff, the rate in section 1 (see note 1, page 153), section 3, or section 4, whichever is lowest, will be applied."

[3] By virtue of this clause plaintiff contends the rates of section 4 were made applicable to all shipments of commodities therein named, whether destined for the Hawaiian Islands or not. In this view we cannot concur. Under it there would be left no substantial reason for the existence of section 4, for in effect it would nullify the restrictive language of the caption and would simply operate to amend section 2 by lowering the rates therein prescribed for such commodities therein listed as were listed in section 4; and all commodities of section 4 are embraced in section 2. We think that by unequivocal language the carrier expressed the intent that the rates in section 4 should apply only to shipments destined to the Hawaiian Islands; that is the natural and obvious import of the tariffs as a whole. Astute ingenuity might succeed in reading ambiguity into the language, but the ordinary, intelligent shipper would find none. In the view we take, both sections remain intact. A shipment of automobiles from Detroit to Portland would meet the conditions of section 2, and, nothing else appearing as to its destination, would take the rate therein prescribed; or, if consigned to Portland for further transportation to the Hawaiian Islands, it would meet the conditions of both sections, and by virtue of the alternative application clause would take the lowest rate prescribed in either.

Defendant in error concedes that if, by the caption or otherwise, section 4 were made applicable only to carload lots or to carload lots of a specified minimum weight, or to goods crated or otherwise prepared in a specified manner, or to a specified routing, the alternative clause would not operate to make the rates therein prescribed applicable to shipments not so conditioned. The restrictive condition here is quite as substantial and as clearly expressed, and there is no more warrant for disregarding it than for holding ineffective the supposed restrictions conceded to be valid and binding.

There is no relevancy in the argument that, by reason of the relation of the Hawaiian Islands to the United States, shipments to those islands are not, strictly speaking, exports. Had the term "export" alone been used in the caption, the argument might have force; but the sense in which it is here employed is made clear beyond all cavil by the added words, "on traffic destined to and consigned to the Hawaiian Islands."

Nor are we able to find relevancy in the argument based upon certain general clauses of export-rate applications, by which rates for Hawaiian Islands traffic are extended to traffic for points in Alaska and ports of British Columbia, north of Queen Charlotte Sound. In effect such clauses operate to read into the caption of section 4 these points, together with the Hawaiian Islands, and make applicable to shipments so consigned for further transportation by water the rates applicable to shipments destined for the Hawaiian Islands. They do not open the rates of section 4 for shipments exclusively domestic.

[4] Neither do we attach any significance to the fact that as of November 1, 1923, the carriers abandoned the alternative application clause in controversy. To avoid the peril involved in the possibility that the courts would take the view here contended for by the defendant in error, they had the right to abrogate the clause, without impliedly admitting the validity of such a contention.

The judgments are reversed, with costs to plaintiffs in error.