**WEST COAST PRODUCTS CORPORATION,**
Appellant,

v.

**SOUTHERN PACIFIC COMPANY,**
a corporation, Appellee.

No. 14078.

United States Court of Appeals
Ninth Circuit.

May 11, 1955.

Albert Picard, San Francisco, Cal., for appellant.

A. T. Suter, F. E. Fuhrman, George L. Buland, San Francisco, Cal., for appellee.

Before FEE, McALLISTER and CHAMBERS, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

Southern Pacific Company[1] brought this action against West Coast Products Corporation[2] to recover claimed additional freight charges on various shipments of olives transported by it and connecting carriers from Orland, California, to various eastern destinations. The basis of the contention was that the charges actually paid were collected erroneously under an item of the tariff which did not cover the shipments. The case came on for trial before a jury, but the trial judge held it was the duty of the court to decide which item of the tariff should apply as a question of law, and thereupon, by consent of the parties, he discharged the jury. The evidence given at the trial was without contradiction or dispute. Thereafter, the court decided in favor of the plaintiff and entered judgment for the Southern Pacific, from which West Coast appeals.

Southern Pacific contends that the conclusion of the trial court was correct in holding that the shipments in question were covered by Item 5670

1. Hereinafter referred to as "Southern Pacific."

2. Hereinafter referred to as "West Coast."

of the Trans-Continental Freight Bureau Eastbound Tariff No. 3–S, which reads: "Olives, salt cured, not preserved in liquid, in waterproof barrels, boxes, kits or pails." The claim of West Coast is that Item 125[3] should apply. This item reads: "Olives, canned or preserved in juice or in syrup, or in liquid other than alcoholic." The trial court made findings of fact, and there is a question as to what weight should be given thereto. In taking the matter from the jury, the judge treated the question as one of law and the testimony as ancillary only, in order to permit him properly to construe the contract. It is the opinion of this Court that such findings should not be accorded the weight given true findings of fact by the trial court on contested issues. The record will be considered as defining the terms and fitting the processes of preparation into the clauses of the tariff. Both parties apparently agreed to this method of determining the legal issue[4] as to which item of the tariff should be applicable. No misapprehension seems to have been involved, and we believe the parties should be bound by their consent to such method of disposal.

 The applicability of the items of the tariff in question will now be considered in light of the definition of the terms and description of the processes given. The olives in the shipments in controversy were placed in rock salt in a bin about 6 feet by 6 feet by 5 feet. A layer of olives 4 or 5 inches thick was first deposited and a layer of salt superimposed thereon to a depth of 1 inch above the olives. Alternating layers of olives and salt of similar dimensions were placed in the bin until the top was reached. This mass was permitted to remain for a length of time, dependent upon the weather, from 3 to 6 weeks. The salt extracts the bulk of the water from the olives. After this operation is completed, the olives are taken out of the bin, the salt shaken off by a machine, and the olives are dipped in water so no salt remains on the outside of the olives. The olives are then spread on a table and a half gallon of olive oil used to give a surface coat to about 100 pounds of olives. These are then placed in wooden kegs lined with paper. Each keg is about 22 inches high and 16 inches in diameter. Between the oil and the liquid exuded by the olives themselves, there will be about 6 to 8 inches of liquid at the bottom of the keg. These kegs should be turned at least once every two weeks in order to keep the olives from drying up and losing flavor and to prevent the formation of mold on the surface. An expert defined the word "salt-cured" as meaning that the salt is absorbed by the olive to such an extent that bacterial decomposition or internal fermentation with mold cannot take place. Osmosis occurs and, as the water is absorbed by the salt, that element penetrates further into the olive and finally preserves it from pit to skin. A ripe olive coated with olive oil would be subject to bacterial decomposition. Salt curing preserves the olive and inhibits bacterial decomposition. Processing in salt permanently preserves the olives. In view of this established process and of the definitions, the problem must be resolved. Unquestionably, if the shipment could be included in more than one tariff designation, it would be proper to select the item more specifically applicable to the product being transport-

3. Item 125 also referred to by Item 3800 reads: "Olives, canned or preserved in juice or in syrup, or in liquid other than alcoholic." Item 3800 contains the following: "Canned goods, pickles, preserves, as described in and subject to package requirements of Item 125."

4. When filed with the Interstate Commerce Commission, tariffs have force and effect of provisions of federal law and must be construed by the courts. Great Northern Ry. Co. v. Merchants Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 66 L.Ed. 943; Bernstein Bros. Pipe & Machinery Co. v. Denver & R. G. W. R. Co., 10 Cir., 193 F.2d 441, 444; Pillsbury Flour Mills Co. v. Great Northern Ry. Co., 8 Cir., 25 F.2d 66, 68.

ed.[5] If there were two tariff descriptions equally appropriate, West Coast, as shipper, would be entitled to the lower rate.[6] There is a suggestion in the record that in the past such shipments have been carried under the tariff description now claimed to be applicable by West Coast. Whether or not this is reasonably explained makes no difference. The carrier is not subject to estoppel. The law requires the railroad to charge and collect the applicable rate[7] irrespective of erroneous interpretations in the past. Otherwise, the policy against the allowance of rebate might be violated. It is axiomatic that rate and tariff items are promulgated for laymen[8] to use in the course of ordinary business affairs. The construction given to such items should have a practical and ready application.

It seems to the Court that there is but little doubt in this matter. These olives were unquestionably salt cured. They were packed in waterproof barrels. They were "not preserved in liquid." The whole process of preserving was curing by the use of dry salt. It seems clear to the Court that at the time of the shipment they were not preserved in liquid. Therefore, we may well say, as we said in Southern Pacific Company v. Lothrop, 9 Cir., 15 F.2d 486, 487:

"Astute ingenuity might succeed in reading ambiguity into the language, but the ordinary, intelligent shipper would find none."

By contrast, we find that these olives were not "canned" as described in Item 125. They were not "preserved in juice or in syrup." They were not "preserved * * * in liquid other than alcoholic." This is true even though by the mechanical manipulation of turning the barrels once every two weeks surface mold might be inhibited. This would be true even if we accepted the dictum of one of the experts for West Coast to the effect that preserving in liquid does not necessarily mean immersing in liquid.

Item 125 seems designed to refer, according to the testimony, to the canned or bottled olives usually found in grocery or delicatessen stores, which are packed in liquid brine. This tariff item seems to cover the green olives which are processed in a cement bin filled with a brine solution consisting of water and salt, in which the olives are kept for about three months and are then packed and shipped in the same brine without ever having been removed therefrom. There seems to be a very clear implication that olives so prepared are "preserved in liquid."

The trial court properly applied Tariff Item No. 5670 above quoted, and gave judgment for the plaintiff.

Affirmed.

5. United States v. Gulf Refining Co., 268 U.S. 542, 546, 45 S.Ct. 597, 69 L.Ed. 1082; De Ramus v. Mengel Co., D.C., 74 F.Supp. 425. As will be noted in the discussion later in this opinion, the Court is of opinion that the shipments here are included in the language of Item 5670 alone and that such language is specifically applicable.

6. United States v. Gulf Refining Co., supra; American Railway Express Co. v. Price Bros., 5 Cir., 54 F.2d 67.

7. Bernstein Bros. Pipe & Machinery Co. v. Denver & R. G. W. R. Co., supra. See 49 U.S.C.A. § 3(2) and § 6(7).

8. Sonken-Galamba Corporation v. Union Pacific R. Co., 10 Cir., 145 F.2d 808, 810; United States v. Missouri-Kansas-Texas R. Co., 5 Cir., 194 F.2d 777, 778.