**NORFOLK AND WESTERN RAILWAY COMPANY, a Corporation, Appellee,**

v.

**PERMANEER INCORPORATED, a Corporation, Appellant.**

No. 71–1018.

United States Court of Appeals,
Eighth Circuit.

Feb. 1, 1972.

Martin M. Green, Green & Lander, Clayton, Mo., for appellant.

Albert E. Schoenbeck, St. Louis, Mo., for appellee.

Before LAY, HEANEY and STE-PHENSON, Circuit Judges.

LAY, Circuit Judge.

This appeal by a shipper, Wrightson Division of the Permaneer Corporation (hereafter called Permaneer), located at Wright City, Missouri, relates to freight charges on certain commodities shipped on the Norfolk and Western Railway from 1966 through 1968. The district court upheld the tariff classification and charges made by the carrier. Norfolk and Western Railway Co. v. Permaneer, Inc., 320 F.Supp. 749 (E.D.Mo.1970). The shipper in its bills of lading recited it was shipping "boards or sheets" of ground wood. The actual articles shipped were cardboard boxes containing some laminated boards (conceded to be

component pieces of furniture), screws, plastic strips, metallic resting glides, occasionally glass and printed assembly instructions. Imprinted on the outside of the boxes were the words, "Furniture," "Bookcase" and "Storage Cabinet" or similar such designations.

■ During a routine inspection on a damage claim by Permaneer, the Western Weighing and Inspection Bureau discovered the nature of the commodity being shipped.[1] Defendant contends that it was shipping the commodities as boards and sheets to which "manufacturing" had been added in accordance with a transit privilege granted by the carrier. This privilege allowed Permaneer to off-load boards and sheets coming from other locations and add, as a part of the manufacturing process, various items. The carrier contended that these additional items altered the commodity to the extent of excluding it from the "boards or sheets" tariff rate.[2]

There exists two basic rate tariffs which the shipper claims applicable. One governs the eastbound shipments from Wright City, Missouri, and another covers the westbound shipments. As to the eastbound shipments Permaneer claims item 5795 of Tariff 2–F, and particularly note 12, applies.[3] The shipper

---

1. On June 24, 1968, the Western Weighing and Inspection Bureau wrote the shipper:

   "In a recent conversation with Mr. E. L. Nappier, General Traffic Manager Pricing, N & W R.R., he informed me that you requested that we write you in regard to proper description applicable to materials being forwarded from one of your plants at Wright City, Mo., consisting of Furniture, KDF, and shipped in individual packages.

   "The commodity in question was the subject of discussion with you by our Traveling Agent, Mr. R. T. Kobbermann, on Nov. 8, 1966, when he directed your attention to a report received from the Eastern Weighing & Inspection Bureau in connection with car CNW–86796, that Bureau questioning your billed description of '17391 square feet boards or sheets of ground wood faced with a decorated material of paint or plastic' and indicating that their inspection revealed that the shipment actually consisted of Glass Door Bookcases KDF, packed in 19F cartons, with notation 'Furniture—Do Not Drop'.

   "At the time, Mr. Kobbermann definitely informed you that the description as found by the Eastern Weighing & Inspection Bureau, namely, Furniture, KDF, was the proper description to apply. A correction was issued to the basis of Furniture, KDF and the undercharge was subsequently paid by you. The description Furniture, KDF is therefore the proper description to apply in railroad transportation on this type of commodity and you were so informed on several subsequent occasions."

2. Permaneer contends that railroad inspectors were in the Wrightson plant on numerous occasions and were well aware of the type of commodity Permaneer was shipping. The railroad denies that its inspectors knew that the defendant was putting hardware, plastic parts, assembly instructions and, in a few cases, glass, into the sealed boxes. The district court found that when the railroad asked for catalogues to determine what was being shipped, the Wrightson Division failed to furnish them. However, "Neither the intentional nor accidental misstatement of the applicable published rate will bind the carrier or shipper. The lawful rate is that which the carrier must exact and that which the shipper must pay." Kansas City Southern R.R. v. Carl, 227 U.S. 639, 653, 33 S.Ct. 391, 395, 57 L.Ed. 683 (1913). It is clear that no "act or omission of the carrier" can "estop or preclude it from enforcing payment of the full amount by a person liable therefor." Louisville & N. R.R. v. Central Iron & Coal Co., 265 U.S. 59, 65, 44 S.Ct. 441, 442, 68 L.Ed. 900 (1924). "[E]quitable considerations may not serve to justify failure of carrier to collect, or retention by the shipper of, any part of lawful tariff charges." Baldwin v. Scott County Milling Co., 307 U.S. 478, 485, 59 S.Ct. 943, 948, 83 L.Ed. 1409 (1939) ; Pittsburgh, C., C. & St. L. R.R. v. Fink, 250 U.S. 577, 581, 40 S.Ct. 27, 63 L.Ed. 1151 (1919) ; West Coast Products Corp. v. Southern Pacific Co., 226 F.2d 830, 833 (9 Cir. 1955).

3. Part 1 of the tariff includes:
   "Board or Sheets, sawdust, ground wood, ground wood and ground bark mixed, or wood shavings, with or without added resin content not exceeding 10 per cent by weight, compressed, preservatively treated or not treated but not plasticized, veneered or not veneered, laminated or not laminated, edges glued or not

claims item 7670 of Tariff 1–P [4] controls the westbound shipments. This tariff does *not* have a corresponding note 12 provision for the inclusion of nails and fasteners.

The district court upheld the railroad's charge that the shipments fell *within the specific purview of a higher tariff rate* for "Furniture, knocked down flat." [5] The district court found controlling the Interstate Commerce Commission's Uniform Freight Classification, (I.C.C. No. 5), Rule 20, governing shipments. It provides:

> "Parts or pieces constituting a complete article, received as one shipment, on one bill of lading, will be charged at a rating or rate provided for a complete article."

Defendant urges that the commodity shipped falls within the classification of "boards or sheets" and additionally on the eastbound shipments that the added strips, etc., constitute "fasteners" as covered by note 12 of Tariff 2–F, item 5795. The shipper urges that if a tariff's language is ambiguous it is entitled to the construction most favorable to the application of the lower tariff. Penn Central Co. v. General Mills, Inc., 439 F.2d 1338, 1341 (8 Cir. 1971); United States v. Great Northern Ry., 337 F.2d 243, 249 (8 Cir. 1964); Union Wire Rope Corp. v. Atchison, T. & S. F. Ry., 66 F.2d 965, 967 (8 Cir. 1933), cert. denied, 290 U.S. 686, 54 S.Ct. 122, 78 L. Ed. 591. Permaneer additionally asserts the rule that where the shipment could appropriately come under either its or the railroad's tariff classification, the shipper is entitled to the lower rate classification. United States v. Gulf Refining Co., 268 U.S. 542, 546, 45 S.Ct. 597, 69 L.Ed. 1082 (1925); Pillsbury Flour Mills Co. v. Great Northern Ry., 25 F.2d 66 (8 Cir. 1928); United States v. Strickland Transp. Co., Inc., 200 F.2d 234 (5 Cir. 1952).

There are two fallacies to this approach. First, the district court found as a matter of fact that the auxiliary items shipped along with the laminated boards were not fasteners. On the present record, we cannot assess this finding to be clearly erroneous. The court in Texas & Pacific Ry. v. Sonken-Galamba Corp., 100 F.2d 158, 159 (5 Cir. 1938), cert. denied 306 U.S. 655, 59 S.Ct. 644, 83 L.Ed. 1053 (1939), observed:

> "Where the tariff provision does not depend for its meaning upon the solu-

---

glued together, flat, cut or not cut to dimensions and/or shaped but not assembled, grooved or indented or not grooved or indented, bored or not bored, edges plain or beveled, grooved, moulded, slotted or tongued (Subject to Notes 1, 3, 9 and 12)."

Note 12 reads in part:
"With carload shipments of articles made subject to this note, there may be included *nails or fasteners* not to exceed five (5) per cent of the weight of the articles made subject to this note included in the shipment." (Emphasis ours.)

4. "Boards or Sheets, sawdust, ground wood, ground wood and ground bark mixed, or wood shavings, with or without added resin content not exceeding 14 per cent by weight, compressed, preservatively treated or not treated but not plasticized, laminated or not laminated, edges glued or not glued together, flat, cut or not cut to dimensions and/or shaped but

not assembled, grooved or indented or not grooved or indented, bored or not bored, edges plain or beveled, grooved, moulded, slotted or tongued (Subject to Note 1) . . . . ."

5. The record on appeal is at best confusing as to the specific tariffs relied upon by the railroad. On supplementary filing (requested by this court) it appears many of the applicable tariffs were not actually offered into evidence. The specific provisions for "Furniture, KDF" (knocked down flat) are found in the Uniform Freight Classification Rules which are included by reference in the tariffs relied upon. Yet these rules were not offered in evidence and no citation is made to these rules in the railroad's brief. There is, however, some reference to these rules in the testimony. The shipper did not complain of the inadequacy of the record until the supplementary filings.

tion of some peculiar question of fact; where the reasonableness of the provisions is not in issue; where the Commission has concededly promulgated a rate which must be applied; and where the only question is whether or not the commodity in question is the commodity referred to in the rate, then there is presented a factual question in no wise differing from any other fact issue determinable by courts and juries. Whether a certain grain is wheat, a certain article of apparel an overcoat, a certain mineral gold, as such terms are ordinarily used, can and should be answered by the usual triers of facts."

Second, where a commodity shipped could be included in more than one tariff designation, that which is the more specific is held to be controlling. United States v. Gulf Refining Co., supra, at 546, 45 S.Ct. 597, 69 L.Ed. 1082; West Coast Products Corp. v. Southern Pacific Corp., supra, 266 F.2d at 832–833; Boone v. United States, 109 F.2d 560, 562 (6 Cir. 1940). As stated in Willingham v. Seligman, 179 F.2d 257, 258 (5 Cir. 1950): "Where general and specific provisions overlap, the specific is deemed to be an exception to the general rule." The rule of construction relied upon by Permaneer is applicable only where two tariffs are *equally* appropriate; under those circumstances the lower rate will be followed. A tariff which specifically fits a particular shipment, as does the "Furniture, KDF" (Knocked down flat) classification, is logically more exact than one which happens to cover the shipment in generalized terms, i. e. "manufacturing." Lastly, it should be noted in order to make the commodity more saleable, the shipper stamped on the outside of its shipping cartons such designations as "Furniture," or "Bookcase." These may be considered relevant proof of the true character of the shipment.

Judgment affirmed.