**FOUR WINDS FORWARDING, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 611–84C.

United States Claims Court.

Oct. 19, 1987.

Alan F. Wohlstetter, Washington, D.C., for plaintiff. Stanley I. Goldman, of counsel.

E. Kathleen Shahan, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. William Dowell, Dept. of the Army, of counsel.

## ORDER

MOODY R. TIDWELL, III, Judge:

This transportation rate case initially came before the court on plaintiff's motion for summary judgment, defendant's motion for dismissal and, in the alternative, its cross-motion for summary judgment. Plaintiff had contracted with defendant to ship defendant's household goods and unaccompanied baggage to overseas destinations. The program under which the goods were shipped had a rate escalation provision designed to protect contractors against ocean carrier cost increases that were beyond their control. Plaintiff requested a rate adjustment for increased costs to its contract. Plaintiff claimed the tariff rates it relied upon to formulate its bids for oversea shipments of military household goods and unaccompanied baggage were legally applicable rates thus entitling it to recover rate increases, *i.e.*, the differences between the rates bid and the more expensive legally applicable rates in effect at the time of actual shipment. Defendant denied the claims maintaining that plaintiff used legally inapplicable rates in preparing its bids so that any increased costs were not covered by the rate escalation provision and that the legally applicable rate which plaintiff should have bid remained unchanged from the time plaintiff submitted bids to the time of actual shipment. This court in *Four Winds Forwarding, Inc. v. United States*, opinion of June 30, 1987, found for defendant and ordered the Clerk to dismiss the Complaint. Plaintiff subsequently moved for reconsideration pursuant to RUSCC 59. The court ordered defendant to respond to plaintiff's motion to ensure that both parties were given a full opportunity to address all of the issues. Plaintiff's motion for reconsideration was granted as evidenced by the briefing and oral argument that followed.[1] The prior Opinion and judgment are vacated and superseded by this Order.

## FACTS

Four Winds Forwarding, Inc. (FWF), is a freight forwarder of household goods, unaccompanied baggage, and used automobiles. FWF participated in the International Through Government Bill of Lading (ITGBL) program under the direction of the Military Traffic Management Command (MTMC). In accordance with the ITGBL program, a shipment of military household goods (HHG) and unaccompanied baggage (UB) is tendered to a freight forwarder for movement from point of origin to point of destination under the forwarder's responsibility as a common carrier. The forwarder packs the tendered shipment in a container or containers, selects the underlying ocean carrier to be used, and establishes the routing of the shipment. The forwarder's rela-

---

1. Inasmuch as this court is a court of record and no Order was issued specifically allowing plaintiff's motion for reconsideration, the court hereby allows the motion.

tionship to the underlying carrier is that of a shipper and, as such, the forwarder purchases transportation services from the ocean carrier and pays the carrier's tariff rates in effect at the time of shipment.

MTMC regularly solicited freight forwarders to submit bids applicable to ITGBL shipments. The bids, which are submitted as single factor rates [2], are solicited for six-month procurement periods referred to as volumes. Since tariff rates change from time to time, a pegged quotation date (PQD) is established for each volume by MTMC and freight forwarders are required to submit bids based on rates in effect on that PQD.

In 1972, MTMC established the Single Factor Rate Adjustment (SFRA) program to reimburse forwarders for legally applicable underlying carrier rate increases which first became public knowledge after the established PQD for each volume. This allowed freight forwarders to bid for contracts, using a rate in effect on the PQD, and, to file for a rate adjustment when tariff rates did, in fact, increase by the time of actual shipment. According to SFRA program guidelines, a rate adjustment was permitted when:

1) The change in purchased marine or air transportation costs was not less than 2.5%.

2) No viable underlying service remained available at the former rate level.

3) The request for adjustment was based upon underlying rate increases that became public knowledge after the PQD.

4) An administrative request for adjustment was filed with MTMC within sixty days after the applicable volume period expired.

Standing International Through Government Bill of Lading Program Rate Filing Instructions and Procedures, Chapter VI, Section 6001 (1979). The SFRA program

protected forwarders from fiscally *disastrous* and unforeseeable rate increases which would uncontrollably diminish expectations of contracts awarded to low bidders. Indeed, MTMC encouraged freight forwarders to seek out the lowest, legally applicable underlying ocean transportation rates. In a message disseminated to all ITGBL participants in July 1982, defendant stated: "MTMC anticipates, but does not direct, that carriers will construct their single factor rates based upon the applicable rates which provide the most economical, efficient and viable service best suited to the needs of their own operation."

On September 29, 1982, MTMC solicited bids for Volume 46; shipments of military HHG and UB. Volume 46 covered shipments from April 1, 1983, to September 30, 1983,[3] and MTMC set the PQD for Volume 46 bids as October 29, 1982. Plaintiff believed the lowest, legally applicable rates on the PQD were the Freight All Kinds (FAK) rates. It is undisputed that plaintiff submitted bids to MTMC based upon various tariffs' FAK rates in effect on the PQD, and was awarded a contract. Subsequent to the submission of plaintiff's bids, and during the term of Volume 46, the tariffs were changed by the ocean carriers to preclude plaintiff's use of FAK rates for military HHG and UB shipments. As a result, plaintiff was forced to ship the tendered goods at more expensive specific Military HHG and UB rates and pay the difference out of pocket. The record shows that plaintiff shipped in single containers from California ports and multiple containers from Atlantic and Gulf ports.

In December 1983, plaintiff filed seven SFRA claims for increases in marine transportation costs arising from its Volume 46 shipments from Atlantic, Gulf and California ports. The seven requests were based on the differences between plaintiff's rates as bid and the more expensive specific Mili-

**2.** A single factor rate refers to a rate covering the total cost of moving a tendered shipment from the point of origin in the continental United States to the point of destination overseas. This rate is intended to reflect in a single dollar figure a forwarder's entire expense, as well as its profit.

**3.** Volume 46 was subsequently extended by MTMC to cover shipments until October 31, 1983. Thus, the SFRA claims filed by plaintiff in December 1983 were submitted within the required 60–day filing period.

tary HHG and UB rates applicable at the time of actual shipment. On January 13, 1984, defendant denied plaintiff's SFRA claims on grounds that FAK rates were never an appropriate basis for computing adjustments under the SFRA program. Plaintiff requested reconsideration by MTMC but was again denied rate adjustments. In a subsequent letter to plaintiff dated February 13, 1984, defendant reaffirmed its previous position and added that the SFRA program applied only to increases in single container rates not multiple container rates—which are less expensive per container to ship. Plaintiff thereafter filed its complaint in this court.

The primary thrust of plaintiff's argument upon reconsideration was that the court, relying on defendant's argument vis-a-vis rates, disposed of the case solely upon a determination that the rate plaintiff actually paid was no greater at the time of shipment than it was at the PQD. Accordingly, plaintiff incurred no increased shipping costs and was not entitled to an SFRA rate increase. The court's analysis originally focused on the difference between the actual rate at the time of shipment and the actual rate at the PQD rather than on the difference between the actual rate at the time of shipment and the bid rate at the PQD. The court concludes, however, that two threshold determinations must be made before the court can properly determine whether plaintiff is entitled to an SFRA rate increase, *i.e.*, the court must first determine whether FAK rates upon which plaintiff relied in formulating its bids were legally applicable to the shipment of military HHG and UB tendered by defendant, and second, whether a multiple con-

tainer rate can serve as the basis for an SFRA.

## DISCUSSION

This case involves a contract claim against the United States and, thus, comes within the jurisdiction of this court. 28 U.S.C. § 1491(a)(1) (1982).[4] The court initially concluded that there were no genuine issues of material fact and that the case was properly before the court on summary judgment motions.[5] The court adheres to this conclusion.

### I. *Failure To Exhaust Administrative Remedies*

Defendant contended that plaintiff's requests for rate adjustments based upon its shipments from California ports are new claims raised for the first time during this proceeding and, as such, are precluded from adjudication because the available administrative remedies have not been exhausted. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938). While this court is well aware of the doctrine of exhaustion of administrative remedies it is axiomatic that this judicial rule is subject to several exceptions. For example, if the complainant establishes that following the administrative processes would be futile. *Weinberger v. Wiesenfeld*, 420 U.S. 636, 641, n. 8, 95 S.Ct. 1225, 1230 n. 8, 43 L.Ed.2d 514 (1975); *Cafferello v. Civil Serv. Comm.*, 625 F.2d 285, 287 (9th Cir. 1980); *Izaak Walton League v. Costle*, 571 F.2d 359, 364 (7th Cir.1978), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 130 (1978); *Appalachian Regional Hosps. v. United States*, 217 Ct.Cl. 1, 15, 576 F.2d

---

**4.** Defendant, through MTMC, established the SFRA program in which forwarders, upon award of contract and compliance with the Standing Instructions, would be awarded rate adjustments if the criteria of the SFRA program were met. *Dean Forwarding Co. v. United States*, 2 Cl.Ct. 559, 563 (1983).

**5.** Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). In evaluating a motion for summary judgment, any doubt must be resolved in favor of the nonmoving party.

*Housing Corp. v. United States*, 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972); *Campbell v. United States*, 2 Cl.Ct. 247, 249 (1983). In addition, the "inferences to be drawn from the ... facts ... must be viewed in the light most favorable to the party opposing the motion" for summary judgment. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Ball v. United States*, 1 Cl.Ct. 180, 183 (1982).

858, 865 (1978); *Bendure v. United States*, 213 Ct.Cl. 633, 641, 554 F.2d 427, 431 (1977); *Pacific Coast Medical Enters. v. United States*, 3 Cl.Ct. 140, 144 (1983). This court believes that exception to the general rule is appropriate in this case.

██ Defendant does not dispute that plaintiff, in accordance with SFRA program guidelines, filed administrative claims for adjustments based upon shipments from the California ports. Defendant claimed, however, that the FAK rate referenced by plaintiff in those administrative claims was different from the FAK rate now relied upon by plaintiff in this proceeding; therefore, the arguments now made by plaintiff before this court were never put before the MTMC. In a letter to plaintiff dated January 13, 1984, defendant stated its reason for denying plaintiff's adjustment claims as follows: "All adjustments requesting increases based on freight all kinds, general cargo, or consolidated cargo rates are disapproved. These types of rates are not considered as appropriate for computing single factor rate adjustments." At no time did defendant indicate that something other than plaintiff's reliance on an FAK rate was the basis for its denial of the SFRAs. Defendant did not reject plaintiff's SFRA requests because plaintiff referenced an inappropriate or incorrect FAK rate. According to defendant, all FAK rates, proper or improper, were an inappropriate basis for an SFRA. Therefore, the fact that plaintiff may or may not have relied upon a different FAK rate in this proceeding is not material because the claims before the court would have been likewise categorically denied by defendant merely because they were based upon an FAK rate. This court concludes that it may properly review the SFRA requests pertaining to these California shipments along with the SFRA requests for the Atlantic and Gulf coast shipments even though the rate adjustments were not properly addressed as to the merits. Any administrative appeal would, in the judgment of this court, have been futile given defendant's exercise of categorical denial. *E.g., Appalachian Regional Hosps.*, 217 Ct.Cl. at 15, 576 F.2d 858.

## II. *Legally Applicable Tariff Rates*

A legal rate is an underlying carrier's rate filed with and published by the Federal Maritime Commission. *Valley Evaporation Co. v. Grace Line, Inc.*, 14 F.M.C. 16, 20 (1970). It is undisputed that both FAK rates and more specific Military HHG and UB rates in question were published by the Federal Maritime Commission and were, therefore, legal rates before, during and after the PQD.

That does not, however, answer the question of whether FAK rates were legally applicable to the transportation of HHG and UB of military personnel. Plaintiff claimed that under circumstances present here both FAK rates and the specific Military HHG and UB rates were legally applicable on the PQD because both rates' commodity descriptions expressly permitted shipments of military HHG and UB. Plaintiff maintained that it had the right to choose between these two rates when formulating its bids. Defendant argued that FAK rates were inapplicable because, where the military personnel's goods are covered by more than one description within a tariff, the rate applicable to the specific Military HHG and UB description is the only legally applicable rate. Both parties cite *United States v. Gulf Refining Co.*, 268 U.S. 542, 45 S.Ct. 597, 69 L.Ed. 1082 (1925), for support.

In *Gulf*, the Court was faced with the issue of which of two ambiguous tariff descriptions applied to the transportation of a particular commodity. The Court concluded, under those circumstances, that the more specific of the two tariff descriptions was the only legally applicable rate. *Id.* at 546, 45 S.Ct. at 599. For this proposition, defendant also cited *Southern Pacific Transportation Co. v. United States*, 197 Ct.Cl. 143, 151, 454 F.2d 740, 745 (1972), *Trans Ocean Van Service v. United States*, 192 Ct.Cl. 75, 121, 426 F.2d 329, 353 (1970), and *Norfolk & Western Railway Co. v. Permaneer, Inc.*, 455 F.2d 76, 79 (8th Cir.1972). The cases relied upon by defendant, however, support this proposition only in the context of cases which

involve the application of two ambiguous tariff descriptions, or one ambiguous tariff description and one clearly appropriate tariff description, to a particular commodity. *Gulf* also enunciated a rule governing the circumstance in which two unambiguous tariff descriptions are equally appropriate to a particular commodity. There, the shipper was entitled to use the least expensive of the two equally applicable rates. *Gulf,* 268 U.S. at 546, 45 S.Ct. at 599. A potentially dispositive issue regarding legal applicability is, therefore, whether this is a case involving two ambiguous tariff descriptions which could apply to a particular commodity or two unambiguous tariff descriptions which are equally appropriate for the transportation of a given commodity, namely, military HHG and UB. This case involves the latter for the Atlantic and California shipments.

The FAK rates applicable to shipments departing from the Atlantic and California ports expressly authorized military HHG and UB shipments on the PQD and, therefore, were as legally applicable as the specific Military HHG and UB rates. A review of these tariffs and their revisions reveals that in each instance the language restricting shipments of military HHG and UB was not added until after the PQD.[6]

■ Defendant contended that the added language which denied use of the FAK rates to plaintiff was merely a clarification of, rather than a post-PQD preclusion limiting, the existing provisions. Defendant cannot be correct. American Coastal Line Joint Venture Tariff Nos. FMC–2 and FMC–3, for example, were first revised to restrict military HHG and UB shipments in December 1982. If the revision was merely a clarification, the restriction would not subsequently have been specifically deleted from the second revision to tariffs FMC–2 and FMC–3 issued in March 1983 and, then,

added again to the third revisions of the two tariffs issued in April 1983. The restrictive language was a substantive change to the tariff descriptions and not a mere attempt to clarify existing provisions. Since courts should avoid interpretation of a tariff which would nullify specific or substantial tariff provisions, *Southern Pac. Co. v. Lothrop,* 15 F.2d 486, 487 (9th Cir. 1926), *cert. denied,* 273 U.S. 742, 47 S.Ct. 336, 71 L.Ed. 869 (1927), this court concludes that FAK rates were applicable to the shipments of military HHG and UB from California and Atlantic ports because these rates were not restricted until after the PQD. Following the reasoning of *Gulf* where two unambiguous tariff descriptions are equally applicable, plaintiff relied justifiably upon FAK rates, the lower of two legally applicable rates, to prepare its single factor bids for shipments departing from the Atlantic and California ports. *Gulf,* 268 U.S. at 546, 45 S.Ct. at 599.

■ Defendant also contended that even if FAK rates were legally applicable, plaintiff was unable to satisfy the consolidation requirements necessary to ship under those rates and should, therefore, be precluded from claiming SFRAs based on those rates. While the court agrees with defendant that FAK rates are not applicable to shipments of a single commodity, and military HHG & UB are considered only one commodity under FAK rates, defendant's contention must fail in this instance. Containers shipped under FAK rates are required to consist of at least three commodities from two or three different shippers. Thus, FAK rates are not intended to apply to the shipments of only one freight forwarder. *Southern Pac. Co. v. Lothrop,* 15 F.2d at 487. Defendant asserted that plaintiff misled the court to believe that plaintiff fulfilled these FAK consolidation requirements when, in fact, it

---

**6.** As previously indicated, the PQD for Volume 46 shipments was October 29, 1982. The dates on which each of the applicable tariffs was first revised to expressly restrict HHG & UB shipments were as follows:

| TARIFF | DATE FIRST REVISED |
|---|---|
| FMC–2 | December 9, 1982 |
| FMC–3 | December 9, 1982 |
| FMC–145 | January 27, 1983 |
| FMC–146 | December 1, 1982 |

It was not until the above dates that these tariffs were revised to include language such as

could not. Defendant, however, offered no evidence to support its assertion. Plaintiff, on the other hand, stated in sworn affidavit by its president that he determined, prior to the submission of bids, that FWF had the capability to consolidate Volume 46 shipments with commodities of other shippers in a manner which would meet FAK requirements. Plaintiff's substantive rebuttal vitiates defendant's bald assertion. This court finds that it must decide this issue against defendant and conclude that plaintiff satisfied the necessary consolidation requirements to take advantage of the FAK rates because mere unsupported assertions are insufficient to overcome sworn statements and to defend against motions for summary judgment. *Jechura v. United States*, 9 Cl.Ct. 753 (1986), *aff'd*, 809 F.2d 791 (Fed.Cir.1986); *see also Exchange Bank v. United States*, 9 Cl.Ct. 651 (1986) (intimation, without supporting evidence, is insufficient in framework of summary judgment to raise a genuine issue of material fact).

■ Defendant is correct, however, with respect to the nonapplicability of FAK rates to shipments under Gulf European Association Agreement No. 10270 Tariff No. 5 (FMC–10). The consolidated FAK rate was inapplicable to Volume 46 shipments prior to the PQD by the express terms of the tariff. The fifth revision to Section V of this tariff, in effect on the PQD, expressly exempted shipments of military HHG and UB from the consolidated shipment provisions. The exemption, which was set forth in a notice at the beginning of Section V, was, consistent with the court's discussion above, a substantive tariff provision and, as such, must be interpreted by this court so as to give effect to its intended meaning, *i.e.*, to make Section V non-FAK rates the only rates legally applicable to shipments of military HHG and UB. Plaintiff was therefore pre-

cluded from relying on the FMC–10 FAK rate when computing its single factor bid for shipments scheduled to depart from the Gulf ports.

### III. *Multiple Container Rates As A Basis For An SFRA*

Defendant contended that even if FAK rates were legally applicable plaintiff must nonetheless be denied its requested SFRAs for its Atlantic coast shipments because plaintiff shipped under multiple container rates, and increases in multiple container rates, according to defendant, were never recognized under the SFRA program as a basis for adjustments. Defendant stated its position clearly in its February 13, 1984, letter to plaintiff: "The single factor rate adjustment is only based on the single container household goods/personal effects, both general and military." When questioned about this asserted MTMC requirement, defendant responded that it was based on broad public policy aimed at safeguarding small businesses which would be likely to ship at single container rates only. Defendant offered no other basis for the rejection of plaintiff's SFRA applications. Defendant's position is not well reasoned.

■ The original purpose of the SFRA program was to reimburse freight forwarders for increased costs, not merely to monitor increased rates of single container shipments.[7] The court, because no enumerated MTMC standard can be pointed to for guidance, is left with no option but to uphold the basic purpose of the SFRA program without the limitation defendant suggests. Defendant did not establish that the SFRA program was designed to distinguish between small and large businesses. Its objective was to safeguard all forwarders, not just some forwarders, from rate increases dictated by the underlying carriers. In addition, MTMC's request that freight

---

"no personal or household effects to be carried under this item."

7. The court was astonished at plaintiff's assertion that defendant granted SFRAs solely upon increases in the legally applicable single container rates, even if there were no actual increases in shipping costs. Yet, defendant admit-

ted that freight forwarders participating in this program could be granted rate adjustments without having actually incurred increased costs. It is the court's understanding that the SFRA program was terminated, and wisely so, because of this inherent defect that detracted from its original purpose.

forwarders minimize costs is incongruous with limiting SFRA's to single container shipments. In order to minimize costs it is incumbent on freight forwarders to use multiple container shipments because multiple container rates are less expensive than single container rates. Therefore, freight forwarders that have bid, using legally applicable rates, whether single or multiple container, and that have subsequently experienced cost increases, may, if properly applied for, receive an SFRA.[8]

The court is of the opinion that plaintiff satisfied all SFRA requirements established by MTMC with regard to its multiple container shipments departing from the Atlantic ports, as well as with regard to the single container shipments from the California ports. Plaintiff's bids were based upon legally applicable rates in effect on the PQD, and the requests for rate adjustments were submitted within the sixty-day filing period. Plaintiff's rate adjustment requests were based upon rate increases that took effect after the PQD. Plaintiff could not actually ship using a viable underlying service at the former rate level and, as a result, it incurred more than the required 2.5% increase in purchased marine transportation costs thereby triggering the SFRA.

## IV. *Damages*

■ Although the court agrees with plaintiff that an SFRA may be based on multiple container rates, and that plaintiff satisfied the SFRA requirements with regard to its shipments departing from Atlantic and California ports, the court cannot grant in its entirety the quantum plaintiff requested. Plaintiff would have this court base each SFRA upon the difference between the FAK rate included in its bids and the specific Military HHG and UB single container rate applicable at the time of actual shipment. Such a measure, if applied to all shipments, would result in plain-

tiff being granted SFRAs for shipping costs it did not actually incur because plaintiff did not in all instances actually pay Military HHG and UB single container rates. The court instead adopts the standard promulgated in *Imperial Van Lines International v. United States*, 9 Cl.Ct. 145 (1985), *aff'd*, 821 F.2d 634 (Fed.Cir. 1987), which allows rate adjustments only for increased costs of underlying transportation actually purchased.

■ In this case, plaintiff is entitled to relief because it actually paid more than it would have if the rates it properly bid had remained applicable at time of actual shipment. Plaintiff's relief, however, is not automatically the difference between the rate bid and the rate at which it actually shipped since these rates are based on one hundred percent occupancy of a shipping container and the record appears to indicate that each ITGBL shipment of plaintiff in dispute did not constitute the entire contents of any container. Plaintiff may recover, instead, only an amount equal to the product of the per container difference between the rate bid and the actual shipping rate multiplied by the percentage of the container attributable to plaintiff's disputed ITGBL shipment. For example, if the difference between the rate bid and the actual shipment rate was $500, and plaintiff's contested ITGBL shipment accounted for fifty percent of goods transported in a given container, plaintiff is entitled to recover only one-half of the actual shipping rate, *i.e.*, $250.

### A. *Rates and Increases*

The military HHG and UB departing from the Atlantic ports were shipped in multiple containers. Applying the standard pronounced in *Imperial*, and adopted above, to these shipments, plaintiff is entitled to recover an amount equal to the per container difference between the HHG and UB multiple container rates under which it

---

**8.** While it may be argued, as it was by defendant, that a small business is helped less by this determination than a larger business because the small business is likely to ship single containers only, the court has never been shown that single container rates are subject to less frequent or severe changes than multiple container rates, whereby the larger businesses shipping at multiple container rates would stand to profit more than the smaller businesses shipping at single container rates.

actually shipped and the FAK single container rates bid multiplied by the percentage of each container attributable to plaintiff's ITGBL shipments in dispute. The parties, in their respective motions, have provided the court with sufficient information to determine the differences between the HHG and UB multiple container rates applicable at the time of actual shipment and the FAK single container rates bid. The rates and differences for the Atlantic coast shipments are as follows:

| ITGBL NUMBER | PQD BID RATE | ACTUAL SHIPPING RATE | ACTUAL RATE DIFFERENCE |
|---|---|---|---|
| FP195464 | $2248 | $2760 | $ 512 |
| FP148490 | $2248 | $2760 | $ 512 |
| CP370682 | $2248 | $3285 | $1037 |
| NP448413 | $2248 | $3285 | $1037 |
| NP021226 | $1995 | $3285 | $1290 |
| NP111071 | $1995 | $2760 | $ 765 |
| NP069880 | $2209 | $3285 | $1076 |
| FP256608 | $2209 | $3285 | $1076 |

The military HHG and UB departing from the California ports were shipped in single containers. Plaintiff is therefore entitled to recover the differences between the HHG & UB single container rates under which it actually shipped and the FAK single container rates bid multiplied by the percentage of each container attributable to plaintiff's ITGBL shipments in dispute. The rates and differences for the California shipments are as follows:

| ITGBL NUMBER | PQD BID RATE | ACTUAL SHIPPING RATE | ACTUAL RATE DIFFERENCE |
|---|---|---|---|
| BP128285 | $3871 | $4490 | $ 619 |
| BP133640 | $3871 | $4490 | $ 619 |
| CP443992 | $3871 | $4490 | $ 619 |

### B. *Percentages of Allocable Shipment Volumes*

The parties have not provided the court with sufficient information to determine the percentage of each container allocable to each of plaintiff's ITGBL shipments in dispute. The court, therefore, cannot actually calculate the final cost increases due plaintiff for these Atlantic and California coast shipments.

### CONCLUSION

For the foregoing reasons, the court concludes that the FAK rates relied upon by plaintiff in this instance were legally applicable rates for shipments departing from the Atlantic and California ports but not for shipments departing from the Gulf ports. In addition, the court concludes that rate adjustments under the SFRA program should be granted to plaintiff based upon the cost differences between the FAK rates as bid and the specific Military HHG and UB rates actually paid at time of shipment taking into consideration the percentage of each container attributable to plaintiff's ITGBL shipment in dispute.

Plaintiff's motion for summary judgment is granted insofar as the court has determined that the FAK rates were legally applicable to the Atlantic and California coast shipments and that multiple container rates are a proper basis for rate adjustments, but plaintiff's attempts to collect rate adjustments for costs it did not incur are denied. Defendant's motion for dismissal is denied, and its cross-motion for summary judgment is granted in part to the extent that the FAK rates vis-a-vis the Gulf coast shipments were not legally applicable, but denied in part with respect to the legal applicability of FAK rates to the Atlantic and California coast shipments and with respect to the bases of rate adjust-

ments in conjunction with multiple container shipments. Plaintiff is entitled to recover the cost increases it actually incurred pertaining to its Atlantic and California coast shipments, but the court reserves determination of this amount and orders the parties to file a joint stipulation within thirty days establishing the percentage of each container attributable to plaintiff's disputed ITGBL shipments and setting forth computations of final cost increases due plaintiff, in the manner prescribed by this court, for each ITGBL Atlantic and California coast shipment discussed above.

IT IS SO ORDERED.